J-S29040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| AQUIL JOHNSON | : | |
| Appellant | : | No. 848 EDA 2016 |

Appeal from the PCRA Order March 4, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005617-2009

BEFORE:   LAZARUS, J., SOLANO, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JUNE 28, 2017**

Appellant Aquil Johnson appeals from the order entered by the Court of Common Pleas of Philadelphia County dismissing Appellant's petition pursuant to the Post Conviction Relief Act ("PCRA")[1] without a hearing.  After careful review, we vacate the PCRA court's order and remand for an evidentiary hearing consistent with this decision.

Appellant was charged with aggravated assault and possession of an instrument of crime in connection with the May 13, 2008 shooting of Kamal Murray ("the victim").  On the day in question, the victim was sitting in the passenger seat of his friend Byron Walker's car, when an individual walked

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

up to the vehicle and shot the victim three times. Shortly after Walker rushed the victim to the emergency room, doctors were able to stabilize the victim, who had bullets wounds in his arms and a minor wound to his chest. The victim was given a low dose of morphine to ease the pain.

Once the victim's condition was stabilized, he spoke with Officer Earl Bonner and Officer Ayers[2] and gave them a detailed description of the shooter. Based on this information, Officer Ayers prepared an incident report describing the perpetrator as an "eighteen-year-old black male, 5/11, 190 pounds, medium build, white thermal, blue jeans, possibly named Quil" as well as noting that the perpetrator had protruding front teeth. Notes of Testimony (N.T.), 8/3/10, at 145-152.

Shortly thereafter, Detective Joseph Murray and Detective Omar Jenkins went to the hospital to present the victim with a photo array, from which the victim identified Appellant as the shooter. The victim indicated that "Quil" shot him after the two men had a fight regarding Quil's disrespect of the victim's girlfriend. N.T., 8/3/10, at 130. The victim admitted that he knew Appellant "all his life." N.T., 8/3/10, at 132. Once the victim's interview was reduced to a written statement, the victim adopted the statement by writing his initials at the bottom of each page.

_____

[2] Officer Ayers's first name is not mentioned in the trial transcripts.

However, at Appellant's trial, the victim recanted his identification of Appellant and denied making any statement to police naming Appellant as the shooter. Defense counsel presented four witnesses: alibi witness Talia McNeil, character witnesses Mckieya Cook and Lorena Ebo, and Appellant himself. Appellant vehemently denied shooting the victim, but admitted that his nickname was "Quil" and that he has protruding front teeth.

At the conclusion of the trial, the jury convicted Appellant of aggravated assault and possession of an instrument of crime. On September 17, 2010, the trial court sentenced Appellant to an aggregate imprisonment term of 12½ to 24 years. On July 27, 2012, this Court affirmed the judgment of sentence. *See Commonwealth v. Johnson*, 2664 EDA 2010 (Pa.Super. July 27, 2012) (unpublished memorandum).

On May 13, 2013, Appellant filed a *pro se* PCRA petition. The PCRA court appointed Atty. Joseph Schultz as Appellant's PCRA counsel, who subsequently filed a no-merit letter and a petition to withdraw. On July 24, 2015, Appellant filed an amended *pro se* petition, raising claims of PCRA counsel's ineffectiveness for *inter alia*, failing to investigate the issues Appellant desired to appeal. On November 19, 2015, Appellant filed a letter to the PCRA court, pointing out that counsel failed to address several issues he wished to raise on collateral review.

On January 31, 2016, Atty. Schultz filed a supplemental amended petition, claiming several of Appellant's claims had arguable merit. On February 5, 2016, the PCRA court notified Appellant of its intent to dismiss

the petition without a hearing pursuant to Pa.R.Crim.P. 907. On February 23, 2016, Appellant filed a *pro se* response. On March 4, 2016, the PCRA court dismissed Appellant's petition.

On March 10, 2016, Appellant filed a notice of appeal. This Court remanded the case for a **Grazier** hearing to determine if Appellant was intelligently, knowingly, and voluntarily waiving his right to counsel on collateral appeal. On May 3, 2016, the PCRA court entered an order permitting Appellant to proceed with *pro se* representation. On July 5, 2016, Appellant filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises ten issues for our review on appeal:

I. Did the PCRA court commit an error of law and fact when it held that trial counsel was not ineffective for failing to prepare for trial and having an alibi witness present an alibi for the wrong date, and was PCRA counsel ineffective for failing to further develope [sic] and litigate this issue?

II. Did the PCRA court commit an error of law and fact when it held, without holding an evidentiary hearing, trial counsel was not ineffective for failing to call Byron walker, Kieyanna Joyner and Sherell Johnson to testify or request a brief adjournment to get them to trial where these witnesses has exculpatory evidence essential to the defense and where appellant submitted affidavits from these witnesses to the PCRA court and a witness certification form pursuant to **42 Pa.C.S. 9545(d)(1)**?

III. Did the PCRA court commit an error of law and fact when it held, without holding an evidentiary hearing, appellant was not entitled to relief based upon his newly discovered evidence where Orrin Jones signed a notarized affidavit stating he was an eyewitness to the crime and appellant is not the person he seen shoot the victim and where, appellant submitted an affidavit

- 4 -

from this witness to the PCRA court and a witness certification form pursuant to **42 Pa.C.S. 9545(d)(1)**?

IV. Did the PCRA court commit an error of law and fact when it held, trial counsel was not ineffective for failing to object to the trial judge's refusal to give a mis-identification jury instruction where the judge's refusal deprived appellant of his Constitutional Right to present a complete defense?

V. Did the PCRA court commit an error of law and fact when it held, trial counsel was not ineffective for failing to object to the admission of a non-testifying witness's (Ayers) police report where the report was prejudicial and violated appellant's rights to confront the witness against him?

VI. Did the PCRA court commit an error of law and fact when it held, trial counsel was not ineffective for failing to object to the trial judge's jury instruction directing the jury to consider [O]fficer Ayers police report and officer Bonner's testimony as substantive and impeachment evidence where the report and the descriptive statements in the report as testified to by Bonner were inadmissible?

VII. Did the PCRA court commit an error of law and fact when it held, trial counsel was not ineffective for failing to object to the prosecutor's closing arguments where the prosecutor's improper remarks about the Bible; the truthfulness of appellant and defense witnesses; everybody who has ever been shot in the city; and why there was no identification in this case, inter alia, deprived appellant of a fair trial?

VIII. Did the PCRA court commit an error of law and fact when it held, appellant's rights under ***Brady v. Maryland*** were not violated by the prosecutor's failure to disclose and turn over material impeachment evidence pertaining to it's key witnesses Det. Ohmarr Jenkins and Kamal Murray where appellant's Newly Discovered evidence show Jenkins was involved in three other cases in which defendants were framed with false statements and court records show Kamal Murray was arrested several times for crimen falsi offenses?

IX. Did the PCRA court commit an error of law and fact when it denied appellant's request for discover seeking material from the Det. Jenkins cases and the Murray cases where the Daily News

Paper Article discovered after trial, displaying Jenkins misconduct in soliciting false statements to frame three other people, constituted exceptional circumstances to warrant discovery in this matter where the central issue in dispute in appellant's trial was whether a statement generated by this detective was true or not?

X. Did any or all of the above errors violate appellant's rights under the 5th, 6th, and 14th amendments to the U.S. Constitution and Art. 1 Sect. 9 of the Pa. Constitution?

Appellant's Brief, at 4-6 (verbatim).

In reviewing the lower court's decision to deny Appellant's PCRA petition without a hearing, we are guided by the following standard:

We first note that the right to an evidentiary hearing on a post-conviction petition is not absolute. **Commonwealth v. Jordan**, 772 A.2d 1011, 1014 (Pa.Super. 2001). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. **Id.** It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. **Commonwealth v. Hardcastle**, 549 Pa. 450, 454, 701 A.2d 541, 542-543 (1997).

**Commonwealth v. Khalifah**, 852 A.2d 1238, 1239–40 (Pa.Super. 2004).

In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in 42 Pa.C.S. § 9543(a)(2), which includes the ineffective assistance of counsel. "It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's

performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 132 (2012) (citing *Strickland v. Washington*, 466 U.S. 688, 687-91 (1984)). To prevail on an ineffectiveness claim, the petitioner has the burden to prove that "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Commonwealth v. Sneed*, 616 Pa. 1, 17, 45 A.3d 1096, 1106 (2012) (quoting *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203, 213 (2001)).

More specifically, with respect to the reasonable basis prong, our courts will conclude that counsel's chosen strategy lacked a reasonable basis only if the petitioner proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Hanible*, 612 Pa. 183, 205–206, 30 A.3d 426, 439 (2011) (citation omitted). "A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. Johnson*, 600 Pa. 329, 345–46, 966 A.2d 523, 532–33 (2009) (quoting *Strickland,* 466 U.S. at 694). The failure to satisfy any one of the three prongs will cause the entire claim to fail. *Sneed*, 616 Pa. at 18, 45 A.3d at 1106 (citation omitted).

First, Appellant alleges that trial counsel was ineffective in failing to prepare for trial and having a witness present an alibi for Appellant for the wrong date. Appellant cites *Henry v. Poole*, 409 F.3d 48 (2nd Cir. 2005), in which the United States District Court of Appeals for the Second Circuit found that a defendant's right to effective assistance of counsel was violated when his attorney presented an alibi defense that proved to be false. The Second Circuit has held that an "attempt to create a false alibi constitutes evidence of the defendant's consciousness of guilt." *Id*. at 65 (quoting *Loliscio v. Goord*, 263 F.3d 178, 190 (2nd Cir. 2001) (citation omitted)). *See generally United States v. Parness*, 503 F.2d 430, 438 (2nd Cir. 1974) (stating that "[i]t is axiomatic that exculpatory statements, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force").

We begin by noting that the *Henry* decision and the decisions of federal district courts are not controlling law in our state courts. *See Commonwealth v. Haskins*, 60 A.3d 538, 553 (Pa.Super. 2012) (recognizing that "the holdings of federal circuit courts bind neither this Court nor the trial court, but may serve as persuasive authority in resolving analogous cases") (citation omitted).

Nevertheless, even if considered for its persuasive value, the *Henry* decision is distinguishable from the instant case. Appellant's attorney did not present a false alibi defense, but misspoke in questioning defense witness Talia McNeil about Appellant's whereabouts on May 30, 2009, when

the shooting occurred on May 13, 2008. When counsel realized the error, he corrected the mistake and repeated his line of questioning to Ms. McNeil so that she could testify as to her knowledge of Appellant's whereabouts on the correct date. Ms. McNeil confirmed that she knew counsel meant to ask her about her account of May 13, 2008, as it was a day she "wouldn't forget" being with Appellant. N.T., 8/4/10, at 26. Ms. McNeil then testified that she recalled the day of the shooting because her phone "starting blowing up" with messages from people accusing Appellant of the shooting that had just occurred while she was with Appellant at a barbeque. N.T., 8/4/10, at 25.

Although counsel did not have a reasonable basis for questioning Ms. McNeil about the wrong date, Appellant failed to show he was unfairly prejudiced by defense counsel's inadvertent reference that was corrected. Despite counsel's error, alibi witness Ms. McNeil repeatedly confirmed that she remembered that she was with Appellant at the exact time that the shooting occurred. Appellant has not shown that there is reasonable probability that, but for counsel's error, the result of the proceeding would have been different, we reject Appellant's claim that he was prejudiced by this error. Accordingly, this ineffectiveness claim fails.

Second, Appellant argues that trial counsel was ineffective in failing to call Byron Walker and Kieyanna Joyner to testify in his defense.[3]

_____

[3] Although Appellant claims in his statement of questions presented that trial counsel was also ineffective in failing to call a third witness, Sherell Johnson,
*(Footnote Continued Next Page)*

"To be entitled to relief on a claim of ineffectiveness for failure to call a witness, [an] appellant must demonstrate [that]: the witness existed, was available, and willing to cooperate; counsel knew or should have known of the witness; and the absence of the witness's testimony prejudiced [the] appellant." *Commonwealth v. Birdsong*, 611 Pa. 203, 24 A.3d 319, 334 (2011) (citing *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 275 (2000)). A PCRA petitioner cannot succeed on such a claim if the proposed witness' testimony "would not have materially aided him. In such a case, the underlying-merit and prejudice prongs of the [ineffective assistance of counsel] test logically overlap." *Commonwealth v. Baumhammers*, 625 Pa. 354, 92 A.3d 708, 725 (2014). "To show prejudice, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's allegedly unprofessional conduct, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Commonwealth v. Gibson*, 597 Pa. 402, 951 A.2d 1110, 1120 (2008)).

*Commonwealth v. Brown*, ---A.3d---, 3186 EDA 2015 (May 4, 2017)

(quoting *Commonwealth v. Johnson*, –––Pa.–––, 139 A.3d 1257, 1284

(2016)).

In his *pro se* PCRA petition, Appellant first asserted trial counsel was ineffective in failing to secure the testimony of Byron Walker, who had witnessed the shooting and rushed the victim to the emergency room. Appellant attached a signed statement from Walker to his petition in which

---

*(Footnote Continued)* ─────────────

he provides no further discussion of this claim. Accordingly, we find this particular argument to be waived for lack of development. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 604 Pa. 176, 191, 985 A.2d 915, 924 (2009) (citations omitted).

Walker claimed that he saw a light skinned, tall man with braids shoot the victim on the day in question. Walker also claimed that he gave this information to defense counsel and was willing and available to testify on Appellant's behalf. However, Walker asserted that when he came to the courtroom on the first day of Appellant's trial, defense counsel told him that he would call Walker when it was his turn to testify and never contacted him thereafter.

Similarly, Appellant also claims that defense counsel should have called alibi witness Kieyanna Joyner to corroborate Appellant's claim that he was at a barbeque at Ms. Joyner's home when the shooting occurred. Appellant asserts that this testimony from Mr. Walker and Ms. Joyner was exculpatory evidence that would have changed the result of his trial.[4]

While the trial court found Appellant expressly approved of trial counsel's "strategy" to proceed with the trial without the testimony of Mr. Walker or Ms. Joyner, the record does not support the trial court's finding. After the Commonwealth rested its case, defense counsel indicated that

---

[4] PCRA counsel initially found this claim to be frivolous, as he incorrectly claimed in his no-merit letter that Appellant neither identified any witnesses who counsel should have called nor gave the substance of the witnesses' testimony. PCRA counsel's assertion was clearly false as Appellant's *pro se* petition identified these claims in detail and included signed witness statements from Mr. Walker and Ms. Joyner. PCRA counsel later realized his error after Appellant filed a letter to the PCRA court, complaining about counsel's representation. PCRA counsel then filed an amended petition, asserting that Mr. Walker and Ms. Joyner were critical witnesses that were essential to Appellant's defense.

several of the witnesses he intended to call were not present in the courtroom. Defense counsel indicated that he wished to begin his case with the testimony of Byron Walker, an eyewitness who was present when the victim was shot in the passenger seat of Walker's car. The following exchange occurred outside the presence of the jury:

> [Trial Court:] It is now 10:00. We convened at 9:00. We are still waiting for -- rather [defense counsel] is waiting for a defense witness so that he can get started.
>
> While we are waiting, [defense counsel], [the prosecutor] indicated that you had two additional witnesses that he believed to be alibi witnesses. Can we just sort this out on the record?
>
> [Defense Counsel:] We have alibi witnesses subpoenaed, and we have a fact witness, Mr. Byron Walker, subpoenaed. It is our intention to not use the alibi witnesses, to use Mr. Walker, to put Mr. Walker on the stand and ask him factual questions, and then [Appellant] will testify. So it is [Appellant], and then our case should be concluded.
>
> [Trial Court:] Mr. Walker, is that the man who was allegedly driving the car when the shooting occurred?
>
> [Defense Counsel:] That's correct. He was driving. He was driving [Appellant].
>
> [Trial Court:] And [Appellant] is on board with this change in strategy?
>
> [Defense Counsel:] He is.
>
> [Prosecutor:] I did not understand -- I believe they were new alibi witnesses?
>
> [Trial Court:] Who were you referring to?

[Prosecutor:] I was referring to specifically the two young ladies. It looks like J-O-H-A-N-Y-A-E Cook; I'm assuming that's a female, and Sherill Baker.

[Trial Court:] Who are those people?

[Defense Counsel:] One lady, Ms. Cook, I believe is a friend, and Ms. Baker is a half sister.

[Trial Court:] Will they be witnesses in your case?

[Defense Counsel:] Your Honor, they were here earlier, and they were here yesterday. I don't think I'm going to be able to get them in here today. I'm having trouble getting my witnesses in[.]

N.T., 8/4/10, at 11-13.

In discussing how the defense wished to proceed, trial counsel confirmed that he intended to present Mr. Walker as a witness:

[Trial Court:] ***So you're going to put on Mr. [Byron] Walker?***

[Defense Counsel:] ***Yes.***

[Trial Court:] You're going to put on someone to testify that your client has a reputation for being non-violent. Is that person in the room?

[Defense Counsel:] Yes.

[Trial Court:] And you're going to put on the defendant?

[Defense Counsel:] Yes.

[Trial Court:] ***Hopefully, when we go out, Mr. Walker will be here.***

N.T., 8/4/10, at 15 (emphasis added).

- 13 -

Just moments later, after counsel and the trial judge reconvened in the presence of the jury, the following exchange occurred:

[Trial Court to Prosecutor:]  Ok.  … [A]re you ready to proceed?

[Prosecutor:]  Yes, Your Honor.

[Trial Court to Defense Counsel:]  Have you and [Appellant] discussed how you will proceed?

[Defense Counsel:] Yes, your Honor.

[Trial Court:]  Is he in agreement?

[Defense Counsel:] He is in agreement.

[Trial Court:]  Is that correct, sir?

[Appellant:] Yes.

N.T., 8/4/10, at 15-16.

Based on this colloquy, the PCRA court found Appellant agreed to a "voluntary waiver" of his right to call Mr. Walker as a witness.  T.C.O. at 10 (citing **Commonwealth v. Lawson**, 762 A.2d 753, 756 (Pa.Super. 2000) (providing that "a defendant who made a knowing, voluntary, intelligent waiver of [his right to testify in his own defense] may not later claim ineffective assistance of counsel for failure to testify")).  However, the PCRA court's finding is a mischaracterization of the trial transcript.  Before the trial court asked Appellant if he agreed with how trial counsel intended to proceed, trial counsel had indicated that he planned to call Mr. Walker to testify when he arrived in the courtroom.  Thus, this colloquy does not show

that Appellant waived his right to challenge trial counsel's decision not to secure the testimony of Mr. Walker.

Moreover, while the PCRA court characterized defense counsel's decision not to call Mr. Walker as a witness as "strategic," it does not explain what counsel's reasoning was for failing to secure the testimony of Mr. Walker, who had witnessed the shooting and claimed Appellant was not the shooter. While the parties agree that Mr. Walker was not present in the courtroom the day the defense presented its case, the parties agree that Mr. Walker had been subpoenaed to testify and was present in the courtroom on the first day of testimony. The PCRA court did not address Appellant's assertion that counsel should have requested a brief adjournment to secure Mr. Walker's presence in the courtroom. Appellant argues that the absence of Walker's testimony was prejudicial as Walker was willing and available to testify and could have offered critical testimony identifying someone other than Appellant as the shooter in this case. Appellant's *pro se* petition contains a signed statement from Mr. Walker confirming these assertions.

With respect to Appellant's claim that counsel was ineffective in failing to call alibi witness Kieyanna Joyner, the PCRA court reasoned that Appellant "failed to prove counsel knew or should have known that [this witness] even existed, let alone were willing to testify." PCRA Opinion, at 10. However, the PCRA court failed to explain how it came to that conclusion without holding an evidentiary hearing at which trial counsel would testify. Moreover, the PCRA court's finding that Appellant was not prejudiced by

counsel's failure to call these witnesses "in light of the overwhelming evidence of guilt" is not convincing as the prosecution's key witness recanted his testimony.

Our precedent establishes that counsel's failure to present the testimony of an eyewitness who was willing and available to testify for the defense and was known to defense counsel may be ineffective assistance. ***See Brown***, ***supra***. Certainly, the testimony of Mr. Walker and Ms. Joyner is material to Appellant's defense and, if believed, could have had a substantial impact on the verdict. Accordingly, after reviewing the record, we determine that Appellant has carried his burden of showing a sufficient factual issue to warrant a hearing.

Third, Appellant claims the PCRA court erred in denying his claim that he is entitled a new trial in light of after-discovered evidence of the eyewitness testimony of Orrin Jones. Appellant attached a notarized statement from Mr. Jones to his PCRA petition, in which Mr. Jones denied that Appellant was the shooter as he had observed a tall man with braids shoot the victim.

To warrant a new trial based on after-discovered evidence, a petitioner must show that the evidence:

> 1) has been discovered after trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence; 2) is not merely corroborative or cumulative; 3) will not be used solely to impeach a witness's credibility; and 4) is of such a nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Cousar*, ___Pa.___, 154 A.3d 287, 311 (2017) (quoting *Commonwealth v. Randolph*, 582 Pa. 576, 873 A.2d 1277, 1284 (2005) (citation omitted)). The PCRA court summarily dismissed Appellant's after-discovered evidence claim by concluding that Appellant failed to establish that this eyewitness could not have been discovered at or prior to trial through reasonable diligence or that Mr. Jones' testimony would have changed the outcome of the case.

However, we find that Appellant alleged sufficient facts to warrant an evidentiary hearing to evaluate his claim further. Appellant contended that he could not have presented Mr. Jones's testimony at trial as Mr. Jones had not come forward and admitted that he had witnessed the shooting until after Appellant's trial had concluded. Mr. Jones's description of the shooter was similar to the description given by Byron Walker. If found to be credible, Mr. Jones's testimony that someone other than Appellant was the shooter would certainly have changed the outcome of the case. *See Commonwealth v. Conley*, 365 A.2d 858, 861 (Pa.Super. 1976) (remanding for an evidentiary hearing on the appellant's claim that he had after-discovered evidence of a witness who would testify that the appellant was not the perpetrator of the crime). Accordingly, the PCRA court erred in denying Appellant an evidentiary hearing on this issue.

Fourth, Appellant claims trial counsel was ineffective in failing to object to the trial court's refusal to give an "identification" instruction. Appellant suggests that he was entitled to a **Kloiber** instruction,[5] asserting that the victim was unable to identify the shooter as he was shot from behind at night and was under the influence of morphine when he was interviewed by the police. Our Supreme Court has established the following with respect to claims of mistaken identity:

> Under **Kloiber**, "a charge that a witness'[s] identification should be viewed with caution is required where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past." **Commonwealth v. Gibson**, 547 Pa. 71, 688 A.2d 1152, 1163 (1997) (citing **Kloiber**). Where an eyewitness has had "protracted and unobstructed views" of the defendant and consistently identified the defendant "throughout the investigation and at trial," there is no need for a *Kloiber* instruction. **Commonwealth v. Dennis**, 552 Pa. 331, 715 A.2d 404, 411 (1998). When the witness already knows the defendant, this prior familiarity creates an independent basis for the witness's in-court identification of the defendant and weakens ineffectiveness claims based on counsel failure to seek a **Kloiber** instruction. **See Commonwealth v. Fisher**, 572 Pa. 105, 813 A.2d 761, 770–71 (2002) (Opinion Announcing Judgment of the Court) (witness's in-court identification valid based on witness having known defendant for eleven years); **Commonwealth v. [Freddie] Johnson**, 433 Pa. 34, 248 A.2d 840, 841–42 (1969) (witness had known defendant for three years prior to robbery and murder; no trial court error in not issuing **Kloiber** instruction); **see also Commonwealth v. [Clarence] Johnson**, 419 Pa.Super. 625, 615 A.2d 1322,

---

[5] **Commonwealth v. Kloiber**, 378 Pa. 412, 106 A.2d 820 (1954).

- 18 -

1335–36 (1992) (witness knew defendant and "had seen him on several occasions" prior to murder; defendant not entitled to *Kloiber* instruction because witness's in-court identification was supported by independent basis).

*Commonwealth v. Ali*, 608 Pa. 71, 106, 10 A.3d 282, 303 (2010).

However, the record clearly shows that the facts in this case did not warrant a jury instruction on mistaken identity. The victim gave a statement to police at the hospital immediately after the shooting in which gave a detailed description of the shooter named "Quil" as an "eighteen-year-old black male, 5/11, 190 pounds, medium build, white thermal, blue jeans" with protruding front teeth. N.T., 8/3/10, at 145-152. Moreover, the victim confirmed that he knew Appellant "all his life" and indicated that on the day of the shooting he quarreled with Appellant, who he claimed was being disrespectful to his girlfriend. N.T., 8/3/10, at 101-103.

While the victim asserts his statement to police was unknowing as he had been given morphine at the hospital, his treating physician, Dr. Basil Harris, M.D., Ph.D., indicated that the victim was administered a relatively low dose of morphine. Both Dr. Harris and Detective Murray testified that the victim was lucid, was aware of his surroundings, and was able to communicate effectively with the police when he gave his statement.

As a result, a *Kloiber* instruction would have been inappropriate as the record shows the victim indicated that he clearly viewed Appellant at the time of the shooting, admitted that he had known Appellant all of his life, and was able to communicate effectively when he gave his statement identifying the shooter to police. Accordingly, counsel cannot be deemed

- 19 -

ineffective for failing to raise a meritless claim. **Commonwealth v. Staton**, 632 Pa. 400, 412, 120 A.3d 277, 284 (2015).

Fifth, Appellant argues that counsel was ineffective in failing to object to the admission of a police report into evidence in which the victim gave his initial description of the shooter. Appellant specifically claims that the admission of the report violated his constitutional right to confront the witnesses against him as the report's author, Officer Ayers, did not testify at trial. In **Crawford v. Washington**, 541 U.S. 36, 59 (2004), the United States Supreme Court held that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."

We need not evaluate whether this claim has any merit, as counsel's failure to object to the admission of the police report had no prejudicial effect. Before the introduction of the police report, Detective Murray had testified from personal knowledge that the victim identified Appellant as his shooter in a signed statement which was then admitted into evidence. In addition, Officer Earl Bonner, who introduced the police report into evidence, testified that he had witnessed the victim give his initial description of the shooter and confirmed that Officer Ayers's report reflected the victim's

statement.[6]  Had defense counsel objected to the prosecution's failure to present Officer Ayers as witness, the Commonwealth then could have had Officer Bonner testify to the victim's initial description of the shooter from his own memory.  Therefore, the record supports the conclusion that there was no reasonable probability that the result of the proceeding would have been different had trial counsel insisted that Officer Ayers also testify and be subject to cross-examination.  Accordingly, this ineffectiveness claim fails.

Sixth, Appellant argues that trial counsel was ineffective in failing to object to the trial court's instruction allowing the jury to consider the aforementioned police report as substantive evidence of Appellant's guilt. However, the trial transcripts show that Appellant is mischaracterizing the trial court's instruction; the trial court told the jury that the victim's prior inconsistent statement to police identifying Appellant as the shooter could be considered substantive evidence.

Our Supreme Court has recognized that a witness's prior inconsistent statement is admissible as substantive evidence if "the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements."

_____

[6] The Commonwealth contends it admitted the report through Officer Bonner "to expedite [his] testimony and summarize his observations" and claimed "[h]ad [defense] counsel objected, the Commonwealth would just have presented Officer Ayers as a witness."  Brief for the Commonwealth at 26.

*Commonwealth v. Lively*, 530 Pa. 464, 471, 610 A.2d 7, 10 (1992) *(*citing *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986)).

Appellant fails to explain why the jury could not consider the victim's prior inconsistent statement as substantive evidence. On the night of the shooting, the victim gave a statement to police identifying Appellant as the shooter. After the statement was reduced to writing, it was signed by the victim. At trial, the victim recanted this identification, claimed he did not remember giving this statement to police, and denied signing anything. In response, the prosecutor presented the victim with a copy of his signed statement. Again, the victim denied making the statement. The Commonwealth then called Detective Murray who testified that he witnessed the victim making this identification. Detective Murray opined that the victim was not intoxicated while giving the statement as he was "lucid" and "able to communicate in a coherent manner." N.T., 8/3/16, at 133. As it was proper for the jury to consider the victim's prior inconsistent statement as substantive evidence, we find counsel was not ineffective in failing to object to a proper jury instruction.

Seventh, Appellant claims the trial counsel was ineffective in failing to object to prosecutor's remarks in closing argument, which Appellant characterizes as prosecutorial misconduct. In *Commonwealth v. Cox*, 983 A.2d 666 (Pa. 2009), our Supreme Court provided the following discussion of the phrase "prosecutorial misconduct":

The phrase "prosecutorial misconduct" has been so abused as to lose any particular meaning. The claim either sounds in a specific constitutional provision that the prosecutor allegedly violated or, more frequently, like most trial issues, it implicates the narrow review available under Fourteenth Amendment due process. *See Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) ("To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial.") (internal quotation marks omitted); *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) ("When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them."). However, "[t]he Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty." *Mabry v. Johnson,* 467 U.S. 504, 511, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). The touchstone is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

\*\*\*

Moreover, ineffectiveness claims stemming from a failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. *Cf.* [*Commonwealth v.*] *Carson,* [590 Pa. 501,] 913 A.2d [220,] 236 [(2006)] ("In order to obtain relief for alleged prosecutorial 'misconduct,' a petitioner must first demonstrate that the prosecutor's action violated some statutorily or constitutionally protected right.").

*Cox,* 983 A.2d at 685.

Moreover, it is well-established that:

it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. *Commonwealth v. Correa*, 444 Pa.Super. 621, 664 A.2d 607 (1995).

\*\*\*

> [L]ike the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. ***Commonwealth v. Carson***, 590 Pa. 501, 913 A.2d 220 (2006); ***Commonwealth v. Holley***, 945 A.2d 241 (Pa.Super. 2008). Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation. ***Commonwealth v. Chmiel***, 585 Pa. 547, 889 A.2d 501 (2005).

***Commonwealth v. Faurelus***, 147 A.3d 905, 914–15 (Pa.Super. 2016) (quoting ***Commonwealth v. Jaynes***, 135 A.3d 606, 615 (Pa.Super. 2016)).

Appellant specifically argues that trial counsel should have objected to the prosecutor's suggestion in closing argument that the reason that the victim recanted his identification of Appellant as the shooter was that he was intimidated by fear of retribution.[7]   However, the prosecutor's closing argument was not improper as the particular comment was a reasonable inference based on the evidence and was also a fair rebuttal to defense counsel's own rejection of this theory in his closing argument.

In the following portion of closing arguments, defense counsel asked the jury to find the victim's recantation testimony to be credible and his statement to the police on the night of the shooting to be unreliable:

---

[7] In his statement of questions involved, Appellant also asserts the prosecutor improperly referred to the Bible in his closing argument.  As Appellant failed to include any further discussion of this claim in his appellate brief, it is waived for lack of development. ***See Johnson****, supra*, 604 Pa. at 191, 985 A.2d at 924.

- 24 -

I submit to you that [the victim] was so intoxicated that he didn't remember exchanging with the police, and if you don't remember what you said, because you were under the influence of drugs, and later, when you become lucid, and you're out of the hospital, and you're not under the influence of Morphine, and you come into court twice under oath and testify without having the drugs in your system and say, No, I didn't see who shot me. No, I don't remember giving that statement, No, I could not have signed that document. No, I didn't circle that picture. What's more trustworthy? What can you have hang your hat on [sic]? What are you more comfortable with, the testimony he gives here in open court while you can watch him testify in open court? Or this statement, that he didn't even write, this scribbly statement, that was given while he was in the ER bleeding and under the influence of drugs? What is more reliable to you?

The Commonwealth are attributing this change of story, not to the fact that he was under the influence in the hospital and not of sound mind to identify anyone or give a statement, they're attributing this to the code on the streets and to -- I don't even know, to some kind of coercion. Well, you're here, ladies and gentlemen, to evaluate the evidence, and there is no evidence, none whatsoever, that [the victim] was threatened, paid off, or that there is any kind of code that he lives by. There is no evidence of that.

When the Commonwealth argues to you that's why he changed his story, you must disregard that, because your oath as jurors is that you will not speculate and guess as to what could have happened.

N.T., 8/4/10, at 89-91.

Thereafter, the prosecutor responded to the remarks made by defense

counsel:

Every single one of you knows what happened in this case, every single one. This was real pain. This was real blood. This was real broken bones. This was real fear. There is a reason, and your common sense tells you what the reason is. There is a reason why [the victim] came into the courtroom and denied identification in this case. Why? Why? He lives around the corner, right around the corner. I forget what the exact location

is, one block, block and a half, two, two blocks, tops.  He knows, the defendant, he where [the victim] lives.  [sic]  His family knows.  Everybody that testified for the defense knows.  Murray knows that they know.

Every time that somebody is shot in the city or the victim of a crime, they have to go through this.  They know they are going to have to get up there and face the defendant and they know the defendant and his family and his friends know where he lives.  No snitching.

N.T., 8/4/10, at 99-100.

We agree with the PCRA court's finding that the prosecutor's remarks constituted only vigorous advocacy that included fair deductions and inferences from relevant evidence.  After defense counsel first attempted to denounce the theory that the victim recanted due to fear of retribution, the prosecutor had latitude to respond to this argument.  As Appellant has not shown that the prosecutor's comment in any way denied him his right to a fair trial, we find this ineffectiveness claim to be meritless.

Appellant's next two issues are related.  In his eighth claim, Appellant argues that the PCRA court erred in holding that the Commonwealth did not commit a **Brady** violation[8] as he asserts that the prosecution failed to disclose material impeachment evidence related to two of its witnesses.  In his ninth claim, Appellant argues that the PCRA court denied his request for discovery to obtain these materials that had allegedly been withheld by the prosecution.

---

[8] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194 (1963).

According to **Brady** and the subsequent decisional law, the prosecution must disclose all exculpatory information that is material to the guilt or punishment of an accused defendant, including impeachment evidence. **See Commonwealth v. Hutchinson**, 611 Pa. 280, 25 A.3d 277, 310 (2011) In order "to establish a **Brady** violation, an accused must prove three elements: [1] the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; [2] the evidence was suppressed by the prosecution, either willfully or inadvertently; and [3] prejudice ensued." **Id.** (quoting **Commonwealth v. Lambert**, 584 Pa. 461, 884 A.2d 848, 854 (2005) (citation omitted)).

Appellant first claims that the Commonwealth withheld evidence that would impeach the credibility of Detective Omar Jenkins, who was present with Detective Murray at the hospital when the victim gave his statement identifying Appellant as the shooter. To support this claim, Appellant attached a newspaper article that contains allegations that Detective Jenkins and another officer coerced individuals to make false statements.

Appellant does not explain why the Commonwealth should have provided him with this newspaper article, which was published three years after his trial ended. Appellant fails to recognize that newspaper articles are not evidence; rather, such articles are inadmissible hearsay as they contain out-of-court allegations that can only suggest that evidence may exist. **See Commonwealth v. Castro**, 625 Pa. 582, 595, 93 A.3d 818, 825 (2014). Moreover, Appellant's claim that Detective Jenkins may have committed

misconduct in his case is pure conjecture; Appellant does not claim that the victim's statement was coerced by the police but argued that the victim was under the influence of morphine in the emergency room and could not have made a knowing statement to police. As a result, we conclude this claim is meritless.

Similarly, Appellant argued that the Commonwealth committed a **Brady** violation in failing to disclose that the victim had been arrested several times for *crimen falsi* offenses. However, prior arrests do not constitute admissible evidence; "the veracity of a witness may not be impeached by prior arrests which have not led to convictions." **Commonwealth v. Chmiel**, 585 Pa. 547, 604, 889 A.2d 501, 534 (2005). **See also Com. v. Reid**, 627 Pa. 78, 125, 99 A.3d 427, 455 (2014) (providing that "witness credibility may be impeached regarding an arrest, only if such arrest resulted in a conviction for *crimen falsi*").[9] Our Supreme Court has held that "inadmissible evidence cannot be the basis for a **Brady** violation." **Commonwealth v. Lambert**, 584 Pa. 461, 475, 884 A.2d 848, 857 (2005). Accordingly, this claim fails.

In the same manner, we reject Appellant's argument that the PCRA court erred in denying his request for discovery with respect to the

---

[9] Even assuming *arguendo* that Appellant was allowed to present evidence of the victim's prior arrests for *crimen falsi* offenses, Appellant does not show what value this information would have for the defense as it would impeach the victim and his recantation of his identification of Appellant.

allegations about Detective Jenkins contained in the newspaper article published three years after his trial. Our rules of criminal procedure provide that on collateral review, "no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances." Pa. R. Crim. P. 902(E)(1). In a similar case, this Court held that "[m]ere speculation that **Brady** materials may exist does not constitute a showing of exceptional circumstances as required by this rule." **Commonwealth v. Dickerson**, 900 A.2d 407, 412 (Pa.Super. 2006).

Appellant has not shown exceptional circumstances to warrant discovery on collateral review. As noted above, Appellant's citation to the allegations about Detective Jenkins set forth in the newspaper article is not relevant evidence that would be admissible at trial. Further, Appellant's suggestion that Detective Jenkins committed misconduct in this case is pure speculation. Appellant does not identify what exculpatory evidence he would search for if granted additional discovery; the irrelevant allegations in the cited newspaper article do not entitle him to go on a fishing expedition for possible exculpatory evidence. Accordingly, the PCRA court did not err in denying Appellant's discovery request.

Lastly, Appellant argues that the cumulation of all the purported errors set forth in his petition entitled him to collateral relief. Although two of Appellant's ten claims warrant a remand for an evidentiary hearing, Appellant has not stated a basis for collective relief on his failed claims. Our Supreme Court has held that "no number of failed [ ] claims may collectively

warrant relief if they fail to do so individually." ***Commonwealth v. Spotz***, 610 Pa. 17, 146, 18 A.3d 244, 321 (2011). As a result, Appellant's claim of cumulative error fails.

For the foregoing reasons, we conclude that the PCRA court erred in dismissing Appellant's amended PCRA petition without a hearing. We vacate the PCRA court's order and remand this matter for an evidentiary hearing on the following two claims: (1) whether counsel was ineffective in failing to secure the testimony of Byron Walker and Kieyanna Joyner and (2) whether the testimony of Orrin Jones constitutes after-discovered evidence that would entitle Appellant to a new trial.

Order vacated. Case remanded for an evidentiary hearing as directed in this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2017