J-S19039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
Appellee  :
v.  :
:
TREVOR GEORGE METTERHAUSER  :
:
Appellant  :
:  No. 1645 EDA 2017
:

Appeal from the PCRA Order May 8, 2017
in the Court of Common Pleas of Lehigh County
Criminal Division at Nos.:  CP-39-CR-0004597-2009
CP-39-CR-0005095-2009

BEFORE:   SHOGAN, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                    **FILED JULY 13, 2018**

Appellant, Trevor George Metterhauser, appeals from the denial of relief and the dismissal of his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm on the basis of the PCRA court's opinion.

In its opinion, the PCRA court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them at length here.  For the convenience of the reader, we note briefly that Appellant claims ineffective assistance of counsel at his violation of probation hearing.  Appellant asserts counsel was ineffective for failing to object to the release and admission of adverse information contained in treatment records and therapy information concerning his court-ordered sex

_____
*   Retired Senior Judge assigned to the Superior Court.

offender therapy. Appellant signed numerous waivers and releases of confidentiality concerning the information.

Appellant raises one question for our review:

Whether the [PCRA] court erred in denying [Appellant's] request for post-conviction relief when [Appellant] was rendered ineffective assistance of counsel which resulted from the attorney's failure to properly object to the entry or use of privileged materials relating to [Appellant's] sex offenders treatment as part of the probation violation determination?

(Appellant's Brief, at 7) (unnecessary capitalization omitted).[1]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the PCRA court we conclude that there is no merit to the issue Appellant has raised on appeal. The PCRA court opinion properly disposes of the question presented. (*See* PCRA Court Opinion, 8/01/17, at 5-13) (concluding: (1) Appellant failed to prove ineffective assistance of counsel; (2) Appellant signed multiple releases which waived confidentiality of information about his sex offender treatment; (3) Appellant failed to complete his treatment; (4) Appellant did not revoke any waiver; (5) Appellant's claim had no arguable merit; (6) counsel cannot be ineffective for failing to raise a meritless claim; and (7) Appellant was not improperly prejudiced). Accordingly, we affirm on the basis of the PCRA court's opinion.

Order affirmed.

_____

[1] We note that PCRA counsel references, but fails to include, a statement of errors or the PCRA court's opinion in Appellant's brief.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 7/13/2018*

**IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA

    vs.

TREVOR G. METTERHAUSER,
        Appellant

No.    4597, 5095/ 2009
        1645 EDA 2017

## ORDER

**AND NOW**, this  1st  day of August, 2017, it appearing that the Appellant has filed a Notice of Appeal in the above-captioned matters; and it further appearing that the accompanying Memorandum Opinion satisfies the requirements of Pa.R.A.P. 1925(a);

**IT IS HEREBY ORDERED** that the Clerk of Courts, Criminal, transmit the record in the above-captioned matter to the Superior Court forthwith.

BY THE COURT:

KELLY L. BANACH,     JUDGE

CLERK OF JUDICIAL RECORDS
LEHIGH COUNTY, PA
2017 AUG -1 AM 10: 46
FILED

1

SERVICE

D___: ___ 4/11/17

T___ ___ INITIALS: ___

PROOF:
DA PD COLL PROB LCP CA JUDGE OTHER:

☐ PERSONAL SERVICE
DA PD COLL PROB LCP CA JUDGE OTHER:

REGULAR MAIL:
FT ATTY
OTHER:

**IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA     |

    |

    vs.     |    No.   4597, 5095/ 2009

    |             1645 EDA 2017

TREVOR G. METTERHAUSER,     |

    Appellant     |

## OPINION

**KELLY L. BANACH, J.:**

On February 16, 2011, the Appellant pled *nolo contendre* to one count of Child Pornography[1] in case 4597 of 2009 and one count of Possession with Intent to Deliver a Controlled Substance[2] in case 5095 of 2009. On May 19, 2011, the Appellant was sentenced to serve no less than three months nor more than 23 months of incarceration, to be followed by five years of probation supervision in case 4597 of 2009. In case 5095 of 2009, the Appellant was sentenced to serve no less than one month nor more than 23 months of incarceration, to be followed by five years of probation supervision, which was to run concurrently with case 4597 of 2009.

On December 10, 2015, after a *Gagnon II* Hearing wherein the Appellant was represented by Attorney James Katz, Esquire, the Appellant conceded the allegations of the Petition, the Appellant's probation supervision was revoked, and the Appellant was resentenced to serve no less than one year nor more than five years of incarceration in a State Correctional Institution in each case, to be served concurrently with each other.

---

[1] 18 Pa.C.S.A. §6312 (D)(1)
[2] 35 Pa.C.S. §780-113(A)(30)

2

On October 31, 2016, the Appellant filed a *pro se* Petition under the Post-Conviction Relief Act. In his Petition, the Appellant alleged that Attorney Katz was ineffective for failing to challenge the admissibility of the confidential communications testified to by the representative of the Lehigh County Adult Probation and Parole Department. He additionally alleged that Attorney Katz's failure to object to the admissibility of the testimony permitted the Court to use said testimony as a basis to reject a lower sentencing recommendation from the probation and parole department. On November 4, 2016, the Office of the Public Defender was appointed to represent the Appellant and filed an Amended Motion for Relief under the Post-Conviction Relief Act on January 13, 2017 (hereinafter collectively referred to as "PCRA Petition").

PCRA Hearings were held via video conference on February 3, 2017 and March 31, 2017. During the March 31, 2017 Hearing, counsel for the Appellant objected to the admission of testimony regarding confidential communications made during the Appellant's treatment. A Memorandum in Support of the Appellant's Motion was filed by defense counsel on April 12, 2017, and further Hearing was held on May 5, 2017 after the Court admitted the testimony previously objected to. At the conclusion of the Hearing on May 5, 2017, this Court denied the PCRA Motion.

On May 18, 2017, the Appellant, through counsel, filed a Notice of Appeal of the denial of the PCRA Motion. On June 26, 2017, counsel was ordered to file a 1925(b) Statement of Errors Complained of on Appeal.

On July 12, 2017, the Appellant filed his 1925(b) statement, arguing that this Court erred in failing to grant the Appellant's PCRA Petition because he was "prejudiced by prior counsel's failure to object to the entry of confidential information regarding his treatment and counseling" which the Appellant believes was inadmissible or confidential. See App. Concise Stmt., July 12, 2017, ¶1.

3

This Opinion follows.

## SUMMARY OF THE FACTS

After pleading *nolo contendre* to one count of Child Pornography and one count of Possession with Intent to Deliver, the Appellant was sentenced to serve an aggregate sentence of no less than three months nor more than 23 months of incarceration, followed by five years of probation supervision. On November 16, 2015, a warrant was issued for a probation violation, which specifically alleged that the Appellant violated his probation supervision by failing to successfully complete Sex Offender Treatment.

At his December 10, 2015 *Gagnon II* Hearing, the Appellant was represented by Attorney James Katz, Esquire. During the Hearing, the Appellant admitted to his unsuccessful discharge from sex offender treatment. Although he admitted the violation, the Commonwealth called Lehigh County Adult Probation Officer Kristin Berke to testify. Officer Berke testified that the Appellant entered the program at Commonwealth Clinical Group on August 14, 2013 and was discharged on November 5, 2015. Officer Berke informed the Court that the Appellant's discharge was

> due to his failing to comply with the following: Dishonest about or persistence in sexually deviant behavior or behaviors that places another person at risk for sexual abuse; refusal to address issues relevant to sex offender treatment, including sexual history, family history, victimization issues, relationship issues, et cetera; and continued reliance on factors associated with the cycle of abuse, including the use of pornography.
> Notes of Testimony, Dec.10, 2015, p. 3-4.

Officer Berke also informed the Court that the Appellant had failed a maintenance polygraph in August of 2014 and made several other admissions of sexual contact with minors in October 2014. At that time, the Appellant was placed in the high-risk treatment protocol. When he was given another maintenance polygraph in August of 2015, he disclosed other instances of prohibited sexual conduct and thoughts of

4

sexual contact with minors. He was again placed in a high-risk treatment protocol. A further maintenance polygraph was given in November of 2015 which focused "primarily on sexual contact with a minor since being in treatment in an attempt to eliminate other high risk behaviors. He was found deceptive in the areas concerning ...restrictions since being in treatment, ... [and] hands-on contact with a minor." *Id.* at 6.

Officer Berke recommended that the Appellant's probation be revoked and that he be resentenced to no less than three months nor more than 23 months of incarceration, to be followed by two years of consecutive probation supervision.

The Appellant then testified that he has maintained employment and has returned to community college to study engineering. He further testified that he struggles with fantasies about children and that he has difficulty opening up in treatment. *Id.* at 9-10.

The Court expressed its concern that there was a lack of progress in the Appellant's treatment:

> We're four years into treatment. There should be more progress. I would venture to say that he's not tossed out of treatment and now hanging for a violation because he was honest. I think it's as much because he hasn't made any progress and his thought patterns are still really dangerous.
>
> *Id.* at 13.

Despite the lower recommendation from the Adult Probation and Parole Department, the Court resentenced the Appellant to no less than one year nor more than five years in a state correctional institution.

## DISCUSSION AND CONCLUSIONS OF LAW

In his 1925(b) Statement, the Appellant alleges that the Court erred in denying the underlying PCRA Petition. Specifically, he argues that testimony regarding his sex

5

offender treatment and counselling was confidential and inadmissible and prior counsel's failure to object to its admission and consideration by the Court resulted in prejudice to the Appellant.

In reviewing the denial of PCRA relief, the appellate court will evaluate whether "the PCRA court's determination 'is supported by the record and free of legal error.'" *Commonwealth v. Weiss*, 81 A.3d 767, 782 (Pa. 2013)(citing *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117 (2012) (internal citations omitted). To be successful under the PCRA, a petitioner must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S. § 9543(a)(2). 42 Pa.C.S. § 9543(a)(2)(ii) allows a petitioner to proceed under an allegation that his counsel provided ineffective assistance of counsel "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

"To succeed on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Weiss* at 782. The *Strickland* test is comprised of three elements:

> The petitioner must establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

> *Sepulveda*, at 1117 (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975 (1987)); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (explaining that, to establish an ineffective assistance claim, a defendant must show that counsel's performance was deficient and that such deficiencies prejudiced the defense).

6

The law presumes that counsel has rendered effective assistance to his/her client and that the petitioner bears the burden of proving the contrary by a preponderance of the evidence. *Commonwealth v. Copeland*, 554 A.2d 54, 58 (Pa.Super. 1988)(internal citations omitted); *Commonwealth v. Rivers*, 786 A.2d 923, 927 (Pa. 2000); *Commonwealth v. Correa*, 664 A.2d 607 (Pa.Super. 1995).

A claim of ineffectiveness must be rejected if the petitioner fails to satisfy any of the prongs. *Commonwealth v. Fitzgerald*, 979 A.2d 908, 910 (Pa.Super. 2009); see also *Sepulveda* at 1117-1118 ("both the U.S. Supreme Court and [the Pennsylvania Supreme Court] have made clear that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first.). Further, a petitioner, by a preponderance of the evidence, "must not only establish ineffective assistance of counsel, he must also plead and prove that counsel's stewardship 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" *Correa* at 609 (citing *Commonwealth v. Granberry*, 644 A.2d 204, 207 (Pa.Super. 1994); *Commonwealth v. Spotz*, 18 A.3d 244, 259 (Pa. 2011).

"A petitioner establishes prejudice when he demonstrates 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. Johnson*, 966 A.2d 523, 533 (Pa. 2009)(citing *Strickland* at 694).

We begin by examining the Appellant's assertion that the communications between the Appellant and his sex offender treatment provider while under probation supervision was confidential, and therefore, inadmissible at the *Gagnon II* Hearing through testimony of the adult probation supervisor.

7

Initially we note that "as a general matter, Pennsylvania law does not favor evidentiary privileges." *Commonwealth v. Simmons*, 719 A.2d 336, 340 (Pa.Super. 1998)(internal citations omitted). "Thus, courts should accept testimonial privileges only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Commonwealth v. Stewart*, 690 A.2d 195, 197 (Pa. 1997)(internal quotations omitted).

42 Pa.C.S.A. §5944 provides:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52),1 to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client.

"The psychiatrist-patient privilege, which was modeled after the attorney-client privilege, codified a strong public policy that confidential communication made by a patient to his psychiatrist should be absolutely protected from disclosure." *Commonwealth v. Fewell*, 654 A.2d 1109, 1112 (Pa.Super. 1995).

> The privilege afforded by § 5944 was intended to inspire confidence in the client and to encourage full disclosure to the psychologist. By preventing the latter from making public any information which would result in humiliation, embarrassment or disgrace to the client, the privilege is designed to promote effective treatment and to insulate the client's private thoughts from public disclosure.
> *Commonwealth v. Kyle*, 533 A.2d 120, 128 (Pa.Super. 1987).

"While opinions, observations, and diagnosis are not protected by the privilege, statements made to a psychotherapist are protected by the privilege, so long as the statements were made "in the course of his professional services in behalf of such

8

client." *Commonwealth v. Moody,* 843 A.2d 402, 406 (Pa.Super. 2004)(internal citation omitted); 42 Pa.C.S.A. § 5944. The privilege must be waived specifically.

The Commonwealth, at the time of the PCRA Hearings, submitted a copy of the Appellant's Specialized Services Program: Sexual Offender Treatment Contract (hereinafter "the contract") for the Court's consideration. The contract outlines rules of the program administered by Commonwealth Clinical Group, including the price per session, participation requirements, and behavior while in treatment both inside and outside of the program. Of particular note are Paragraph 10 and the Authorization for Release of Information at the conclusion of the contract.

Paragraph 10 states:

> I understand that my probation/parole officer and/or DCYS social worker will be notified immediately of any violation of this contract. I also understand that local and/or State Police departments may be contacted if necessary to maintain victim or community safety. I also understand and agree that any violation of the conditions of this contract may be grounds for termination from the program at the discretion of the staff. I agree that the staff may terminate my treatment for any other behavior not outlined above.

The Authorization for Release of Information provides the Appellant's consent and authorization to disclose information to/receive information from the Appellant's probation officer. Specifically, it allowed the disclosure of the Discharge Summary/Admission Note, Outpatient Treatment Summary, Referral/Treatment Summary Letter, Polygraph Assessment, Psychological Evaluation, Psychiatric Evaluation, Outpatient Initial Evaluation, and Abel Screening Assessment. The Authorization also informed the Appellant that he could revoke the authorization at any time by notifying Commonwealth Clinical Group, Inc. in writing. The Appellant initialed and/or signed both portions of the contract on August 14, 2013.

9

The Appellant also signed a Specialized Services Acknowledgment of Limited Confidentiality and Waiver form (hereinafter "limited confidentiality waiver") on August 14, 2013. In the limited confidentiality waiver, the Appellant consented to "unrestricted communication between staff at Commonwealth Clinical Group, Inc. and the Adult County Probation ([Probation Officer] Tom Baer[)]." He also consented to "unrestricted communication between treatment staff and any other individual or agency with who treatment staff judge communication is necessary to achieve the purposes [of coordinating and planning treatment, protecting the community from my sexually aggressive behavior, and repairing damage perpetrated on my victims by my sexually aggressive and abusive behavior]." As in the contract, the Appellant was put on notice that he could revoke the waiver at any time by notifying Commonwealth Clinical Group, Inc. in writing.

On August 21, 2014, the Appellant also executed a Polygraph Consent Agreement, agreeing to waive any and all rights of privacy in reference to taking the polygraph examination(s), and authorized the disclosure of the results to the treatment provider for "whatever use they may determine." He further acknowledged that the examination is conducted as part of his supervision and/or treatment and that he could not be forced to take the polygraph examination, he could discontinue the test at any time, and that he would be free to leave at any time.

Although in his Memorandum in Support of his PCRA Petition, the Appellant argued that the information testified to by Ms. Burke at the time of the *Gagnon II* Hearing regarding the Appellant's treatment was provided "for the purpose of sentencing [or] to establish a factual basis for a parole violation," and not for the purposes stated in the limited confidentiality waiver, we disagree. It appears after review of the transcript of the December 10, 2015 *Gagnon II* Hearing that the basis of

10

the Appellant's parole violation was that he did not successfully complete sex offender treatment. Notes of Testimony, Dec. 10, 2015, p. 3. The Appellant admitted the violation. *Id.* While the Court did hear additional testimony and more specific information from Ms. Burke regarding the Appellant's failure to complete the sex offender treatment, we believe that the details of the failure merely provided the Court with a complete picture of the Appellant's lack of progress and ability to conform his behavior in the program. We believe that the written limited confidentiality waiver gave the treatment provider the ability to disclose the failures in treatment to the probation department and the ability to terminate the Appellant's participation in the program. No privilege exists between the Office of Probation and Parole and its agents and the Appellant and therefore, the disclosure to the Court by Ms. Burke was admissible.

In support of his PCRA Petition, the Appellant also argued that the disclosures made to his treatment provider and shared with the adult probation and parole department violated his Fifth Amendment privilege against self-incrimination. He argued that because a condition of his supervision was to complete sex offender treatment and because he knew that failing to disclose information requested about victims would end in a dismissal from the sex offender treatment program, he was "in custody" for purposes of the self-executing provision of the Fifth Amendment.[3]

---

[3] It is well settled that, in general, the protections of the Fifth Amendment provides "no person … shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; see also Article I, § 9 of the Pennsylvania Constitution. "This prohibition not only permits the refusal to testify against one's self when a defendant in a criminal trial, but 'in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate [the speaker] in future criminal proceedings.'" *Commonwealth v, Knoble*, 42 A.3d. 976, 979 (Pa. 2012)(citing *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (further internal citation omitted)). "The Fifth Amendment privilege is not self-executing, and answers are generally not considered compelled "within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege." *Id.*, at 979, citing *Murphy* at 427, 104 S.Ct. 1136.

The Pennsylvania Supreme Court, in *Commonwealth v. Knoble*, 42 A.3d. 976 (Pa. 2012), set out to determine if "a probationer may invoke his Fifth Amendment right against self-incrimination for an unrelated offense, regardless of whether the information will be used in subsequent criminal proceedings, and whether such invocation must be made at the time of interrogation." *Knoble* at 979, citing *Commonwealth v. Knoble*, 605 Pa. 256, 988 A.2d 1288 (2010) (*per curiam*). In that case, the defendant sought to have the answers to the questions posed at his therapeutic polygraph declared impermissible evidence. He argued that because he believed that his probation would be revoked if he did not participate and pass the examination and that he would be returned to prison for failing to answer any of the questions posed during the polygraph examination, he was "compelled" to answer the questions in violation of the 5th Amendment.

The *Knoble* Court determined that the defendant, in speaking with his probation officer after making revelations of a prior victim during a therapeutic polygraph examination, was not "in custody" for purposes of the constitutional requirement to provide *Miranda* warnings.

> There was no police supervision during his therapy; the treatment was out-patient in nature, and Knoble arrived and attended the sessions independently. Knoble knew he was able to challenge the conditions of his probation; thus, he was aware he could challenge the polygraph test, which he knew he would have to submit to as a probation condition. Knoble cannot pretend he never expected to be asked about his past criminal endeavors while on probation as "the nature of probation is such that probationers should expect to be questioned on a wide range of topics relating to their past criminality." *Minnesota v. Murphy*, 465 U.S. 420, 432, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984). There is no suggestion Knoble was in some way misled by any expectation of confidentiality at any point, as he knew his probation officer would be privy to the information disclosed and in fact signed a limited confidentiality waiver, consenting to unrestricted communication between the program staff and his probation officer. ... In sum, one can

12

> hardly suggest Knoble was "compelled" within the meaning of the Fifth Amendment, when he knew the terms of his probation, was aware of his ability to challenge the terms prior to beginning his treatment, and failed to raise any such challenge either before or during questioning.
>
> *Id.* at 981.

The case at bar is similar to *Knoble*. Here, there was no police presence during therapeutic consultation, the Appellant attended therapy on an outpatient basis, arriving and attending independently. The Appellant was aware that he could discontinue the polygraph examination and was free to leave at any time during the examination, as evidenced by his signed Polygraph Consent Agreement. He further acknowledged by his signature that the results of the polygraph examination would be revealed to the treatment provider. Like the defendant in *Knoble*, the Appellant was not misled in any way regarding an expectation of confidentiality and signed documents to that effect. Therefore, we cannot agree that the Appellant was "compelled" within the meaning of the 5th Amendment so as to invoke the self-executing provision.

Because we find that the testimony of Officer Burke was admissible, we believe that the Court's consideration of the testimony was proper. Therefore, we also find that Attorney Katz's failure to object to the admissible testimony was not ineffective. The Appellant has failed to satisfy the first prong of the *Strickland* test and thus, his PCRA claim must also fail.

## CONCLUSION

For all of the forgoing reasons, we believe that this Court properly dismissed the Appellant's underlying PCRA Petition alleging ineffectiveness of counsel at the time of his *Gagnon II* Hearing on December 10, 2015. Therefore, we believe that the instant Appeal ought to be dismissed.

By the Court:

Kelly L. Banach, J.

14