J-A28044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JUSSVAN ESQUILIN | : | |
| | : | |
| Appellant | : | No. 1693 EDA 2018 |

Appeal from the Judgment of Sentence April 6, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005124-2015

BEFORE:   PANELLA, P.J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED FEBRUARY 18, 2020**

Appellant Jussvan Esquilin appeals the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of attempted involuntary deviate sexual intercourse (IDSI) with a person less than sixteen years of age,[1] aggravated indecent assault of a person less than sixteen years of age,[2] unlawful contact with a minor,[3] and corruption of minors.[4] Appellant challenges the sufficiency of the evidence supporting his convictions and asserts the trial court erred in refusing to instruct the jury to disregard a particular statement made by the prosecutor. After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 901(a), 3123(a)(7).
[2] 18 Pa.C.S.A. § 3125(a)(8).
[3] 18 Pa.C.S.A. § 6318(a)(1).
[4] 18 Pa.C.S.A. § 6301(a)(1)(ii).

Appellant was charged in connection with the aforementioned offenses after G.E. ("the victim") reported allegations that she had been sexually abused by her cousin, Appellant. At the time of the abuse started, the victim was thirteen years old and Appellant was twenty-three. On January 22, 2014, the victim's father allowed Appellant to move into his home located at 4241 Loring Street in Philadelphia where the victim and her extended family also resided. While Appellant shared a room in the basement with one of the victim's brothers, the victim shared a room on the second floor with her niece. Notes of Testimony ("N.T."), 12/13/17, at 53-54, 56, 59.

Shortly after Appellant moved into the family home, Appellant began to send suggestive text messages to the victim. On one occasion, Appellant directed G.E. to open her bedroom door and threatened to tell G.E.'s parents she "liked him" and "wanted to be with him" if she refused. *Id*. at 66. After Appellant entered the victim's room, he began to kiss G.E.'s neck and placed his fingers in her vagina. While the victim's niece was asleep in the room at the time, she did not wake up. *Id*. at 58, 66-72; N.T. 12/15/17, at 20.

On a separate occasion, Appellant texted G.E. to come to the basement, again threatening to tell her parents that she initiated the sexual contact. G.E. felt that her parents would choose to believe Appellant over her. G.E. went downstairs to the basement, told Appellant to leave her alone, and began arguing with Appellant. Thereafter, Appellant pushed her onto the bed, penetrated her vagina with his penis, and ejaculated into a towel on the side of the bed. Once G.E. went to the bathroom, she observed she was bleeding.

- 2 -

At the time of this attack, G.E.'s brother was present on the other side of the basement. N.T. 12/13/17, at 72-79.

G.E. next recalled an assault in the living room of the home. G.E. had been sitting on the living room floor when Appellant entered the room, pushed G.E. onto her back, and penetrated her vagina with his penis. *Id*. at 80-83. On another occasion, Appellant came into the victim's bedroom, stood in front of her, pulled her head towards his penis, and attempted to place his penis in her mouth. The victim recalled that her face came within a foot of Appellant's pants, but she was able to avoid this contact. Appellant then grabbed the victim's hand and put it down his pants. The victim could not recall if her hand went inside of Appellant's underwear. *Id*. at 89-94.

In addition to the assaults that occurred in her home, G.E. claimed Appellant assaulted her at her brother's house at 1208 West Luzerne Street in Philadelphia. Appellant sent G.E. another message telling her to come over to her brother's house, again threatening to tell her parents she had initiated sexual contact if she did not comply. When G.E. entered the home and went up to the second floor, Appellant pulled her into a bedroom, pushed her onto an inflatable bed, and took off the victim's clothing. After pulling the victim's underwear aside, he penetrated her vagina with his penis. G.E. recalled that her niece was in the living room at the time of this attack. *Id*. at 84-89.

G.E. repeatedly asserted that she did not disclose the abuse to her parents because she doubted that they would believe her. Rather, she felt her parents would believe Appellant's insinuations that G.E. "was the one

looking for [Appellant,] that [she] was provoking him." ***Id***. at 94-95. When the victim's mother confronted her after seeing a Facebook message that suggested the victim and Appellant had sexual contact, the victim asked her mother if she "was going to hit" the victim. N.T. 12/14/19, at 44. The victim's mother indicated that she would not hit the victim but would listen to her. The victim's mother became angry when the victim revealed the abuse. She did not respond with violence against the victim, but sought to find Appellant, who admitted to the abuse. The victim's mother repeatedly slapped Appellant in the face and told one of her sons to call the police and report the allegations. ***Id***. at 44-45.

The victim's older brothers testified that they also confronted Appellant with these allegations, after which Appellant admitted he had sexual contact with the victim and attempted to apologize. The victim's brothers then began beating on Appellant until law enforcement arrived. ***Id***. at 65-66, 83-84.

The victim's father testified that he had a strong familiar bond with his nephew, Appellant, who he brought to the United States from Puerto Rico so that Appellant would "succeed and grow." N.T. 12/14/17, at 116-17, 125. The victim's father, admitted that he had a "perfect relationship" with Appellant, trusted and loved Appellant like he was his own son, and gave him a position in the family's auto body business. ***Id***.

The victim's father indicated that learning that Appellant had abused his daughter caused a "lot of pain in his soul" and "broke the deepest part" of his well-being given that he loved Appellant like his own son. N.T. 12/14/19, at

125.  The victim's father indicated that the allegations of Appellant's abuse caused anger throughout his extended family in the United States and Puerto Rico and damaged his relationship with various family members.  At the time of trial, the victim's father had not spoken with his own mother for three years as she refused to listen to his assertions that Appellant had sexually abused his daughter.  *Id*. at 124-125.

After Appellant was charged in connection with the victim's allegations, Appellant proceeded to trial, in which a jury convicted Appellant of the aforementioned offenses.  On April 6, 2018, the trial court sentenced Appellant to an aggregate term of four to eight years of incarceration to be followed by two years of sex offender probation supervised by the state Board of Parole and Probation.

After Appellant filed this timely appeal, the trial court directed Appellant to file a concise statement of errors on appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days.  Appellant filed an untimely 1925(b) statement along with a "Motion to Extend Due Date to Submit 1925(b) Statement."  On November 30, 2018, the trial court filed an opinion, in which it concluded that Appellant's claims had been waived by his failure to comply with Rule 1925(b).

On December 5, 2018, Appellant filed a motion for remand, asking that his untimely Rule 1925(b) statement be considered *nunc pro tunc*.  On January

8, 2019, this Court remanded the case for the trial court to file a supplemental opinion, retaining jurisdiction to decide the merits of the appeal.[5]

Appellant raises two issues for our review:

1. Was the evidence insufficient to convict [Appellant] of any charges where there was no prompt reporting of the offenses, a lack of physical evidence, and major discrepancies between the Preliminary Hearing, Philadelphia Children's Alliance Video, and the trial testimony[?]

2. Did the trial court err by denying the request of defense counsel … to instruct the jury to disregard the statements made by [the prosecutor] concerning the Facebook message that said for the complaining witness to close her legs where Defense counsel did not mention this part of the Facebook message during the trial or closing argument because of the Rape Shield Law.

Appellant's Brief, at 3 (reordered for review).

We first review Appellant's claim that there was insufficient evidence to support his convictions. Our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no

---

[5] The untimely filing of a court-ordered 1925(b) statement "is *per se* ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal." **Commonwealth v. Andrews**, 213 A.3d 1004, 1010 (Pa.Super. 2019) (quoting **Commonwealth v. Burton**, 973 A.2d 428, 432-33 (Pa.Super. 2009)).

- 6 -

probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Leaner*, 202 A.3d 749, 768, (Pa.Super. 2019) (citation omitted). To reiterate, the jury, as the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). In conducting review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. *Id.* at 39-40.

*Commonwealth v. Baumgartner*, 206 A.3d 11, 14–15 (Pa.Super. 2019).

Appellant does not claim the prosecution failed to prove any particular element of any of the offenses. Instead, Appellant baldly asserts there was a "lack of physical evidence" to prove he sexually assaulted G.E., who he claims gave inconsistent testimony during her initial interview, the preliminary hearing, and trial. Moreover, Appellant claims there was no justifiable reason why G.E. failed to promptly report allegations that Appellant had sexually assaulted her.

Despite Appellant's claim that he could not be convicted of sexual offenses without physical evidence to corroborate the victim's allegations, "[t]his Court has long-recognized that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses."

***Commonwealth v. Diaz***, 152 A.3d 1040, 1047 (Pa.Super. 2016) (quoting ***Commonwealth v. Charlton***, 902 A.2d 554, 562 (Pa. Super. 2006)). After hearing the victim's account that Appellant had sexually assaulted her on multiple occasions, the jury was free to find her testimony credible.

Appellant focuses his argument on the credibility of G.E., the prosecution's main witness, suggesting that her testimony is wholly unreliable due to alleged inconsistencies in her testimony and his claim that there was no justifiable reason why G.E. would delay in reporting the abuse. In reviewing a similar claim, this Court noted the following:

> While challenges based on inconsistent testimony generally implicate the weight of the evidence, in [***Commonwealth v. Karkaria***, 533 Pa. 412, 625 A.2d 1167 (1993)], our Supreme Court observed the following with respect to testimony and sufficiency of the evidence.
>
> > Normally, the evidence is deemed to be sufficient where there is testimony offered to establish each material element of the crime charged and to prove commission of the offense by the accused beyond a reasonable doubt. The question of credibility is left to the [finder of fact] and the verdict will not be disturbed if the [finder of fact] determines the evidence is worthy of belief.
> >
> > We have, however, made exception to the general rule that the [finder of fact] is the sole arbiter of the facts where the testimony is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture.
>
> ***Karkaria***, 625 A.2d at 1170.

***Commonwealth v. Smith***, 181 A.3d 1168, 1186 (Pa.Super. 2018), *appeal denied*, 193 A.3d 344 (Pa. 2018).

- 8 -

To the extent that Appellant asserts that there were major discrepancies between the victim's testimony at her initial interview with the Philadelphia Children's Alliance, the preliminary hearing, and trial, Appellant does not develop this claim further with any specific citations to the record to these alleged inconsistencies or any applicable analysis. ***Commonwealth v. Perez***, 625 Pa. 601, 616, 93 A.3d 829, 838 (2014) (finding the appellant's claims to be waived due to his failure to include developed argument or citation to supporting authorities and the record). As such, we find this specific claim to be waived by Appellant's lack of development.

While Appellant argues that the victim's testimony was unreliable due to her delay in reporting the abuse, this fact was to be weighed by the jury as fact finder in assessing the victim's credibility. ***Smith***, ***supra***. Appellant is not entitled to relief under ***Karkaria*** as Appellant has not shown that the victim's testimony was so inconsistent as to be completely irreconcilable.

To the extent that Appellant asks this Court to find that the victim's testimony was not credible, Appellant is raising a challenge to the weight of the evidence, not its sufficiency. A weight of evidence challenge "concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014) (citation and quotation marks omitted).

However, Appellant failed to raise a weight of the evidence challenge in the lower court pursuant to Pa.R.A.P. 607(A). Our Supreme Court has recognized that:

[an] appellant's failure to challenge the weight of the evidence before the trial court deprived that court of an opportunity to exercise discretion of whether to grant a new trial. Because appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence, this Court has nothing to review on appeal.

*Commonwealth v. Sherwood*, 603 Pa. 92, 110, 982 A.2d 483, 494 (2009) (citations omitted) (noting that a weight claim should be deemed waived by noncompliance with Rule 607 regardless of whether the trial court addresses the issue on the merits). As Appellant did not properly preserve a challenge to the weight of the evidence in the trial court, we find this issue to be waived.

Appellant also claims the trial court erred in refusing defense counsel's request for an instruction to the jury to disregard a particular statement by the prosecutor in closing argument. Appellant argues that the prosecutor committed misconduct in telling the jury that defense counsel had not shown the jury a particular text message, which Appellant claims was inadmissible.

In reviewing a claim of prosecutorial misconduct, our standard of review is limited to "whether the trial court abused its discretion." *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa.Super. 2005) (quoting *Commonwealth v. DeJesus*, 567 Pa. 415, 438, 787 A.2d 394, 407 (2001)). More specifically,

with specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. *Commonwealth v. Correa*, 444 Pa.Super. 621, 664 A.2d 607 (1995). Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. *Commonwealth v. Rios*, 554 Pa. 419, 721 A.2d 1049 (1998).

Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." ***Commonwealth v. Fletcher****, 580 Pa. 403, 434–35, 861 A.2d 898, 916 (2004) (quotation and quotation marks omitted). The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. ***Commonwealth v. Faulkner****, 528 Pa. 57, 595 A.2d 28 (1991).

***Commonwealth v. Jaynes***, 135 A.3d 606, 614–15 (Pa.Super. 2016). ***See Commonwealth v. Faulkner***, 528 Pa. 57, 77, 595 A.2d 28, 39 (1991) (finding trial court did not abuse its discretion in finding that the prosecutor's comment that defense counsel was "stupid" and his conduct "outrageous" did not prejudice the jury as to warrant a new trial).

To analyze whether the prosecutor's remark in her closing statement was proper, it is necessary to discuss the context in which the statement was made about particular evidence presented at trial. In cross-examining the victim, defense counsel had asked whether the victim visited Appellant at his apartment to see his infant son after she made these allegations against Appellant. The victim responded "no," but clarified that on one occasion, she and her sister-in-law went to Appellant's home to take Appellant's infant to the Puerto Rican Day parade. The victim indicated that she did not go inside Appellant's home. N.T., 12/13/15, at 126-27.

The victim indicated that she took a picture of Appellant's infant at the parade and sent the photo in a text message to the infant's mother, who was

Appellant's girlfriend at that time. Defense counsel introduced this picture into evidence and asked if Appellant's girlfriend wrote the victim back to tell her she was upset that the victim had this picture given the allegations she had made against the infant's father, Appellant. When the victim responded in the affirmative, defense counsel asked the victim if it was appropriate to talk to Appellant's family after she had accused him of sexual assault. The prosecution made an objection, which the trial court sustained. *Id* at 132-33.

On redirect examination, the prosecutor referred back to the text message thread Appellant's girlfriend had sent to the victim. The prosecutor asked if the victim if defense counsel had not read the final portion of Appellant's girlfriend's text message, in which Appellant's girlfriend told the victim in Spanish to "Close your legs more." *Id*. at 142-43. The victim responded in the affirmative. Defense counsel did not object.

During closing argument, the prosecution referred back to this text message exchange and specifically argued:

> But remember what the girlfriend wrote in response. Remember what I then asked her that the defense attorney didn't read into the record. The girlfriend tells her, Close your legs. What does that tell us? That tells us that even [Appellant's] girlfriend, even the mother of his child knew, just like we all know that sex happened … That is corroboration.

N.T. 12/15/17, at 90.

Appellant suggests that the prosecutor's comment gave the jury the impression that defense counsel was purposefully trying to avoid the admission of the part of the text message in which Appellant's girlfriend told

the victim to "close [her] legs." Appellant specifically asserts that the defense would have been prohibited from admitting such evidence under the Rape Shield Law, which prevents a defendant from seeking to admit "evidence of specific instances of the alleged victim's past sexual conduct" in criminal prosecutions related to sexual offenses. 18 Pa.C.S.A. § 3104.[6]

When reviewing the challenged statement, we note that the prosecutor did not specifically criticize defense counsel for failing to admit this statement, but merely made this reference to help the jury recall when the prosecution had referred to this evidence on re-direct examination as it had not been included in the defense's cross-examination of the victim.

We find that this statement did not have the "unavoidable effect … to prejudice the jury, forming in their minds fixed bias and hostility toward [Appellant] so they could not weigh the evidence objectively and render a true verdict." **Jaynes**, **supra**. As such, we conclude that the trial court did not abuse its discretion in denying this claim.

For the foregoing reasons, we affirm.

Judgment of sentence affirmed.

---

[6] This Court has clarified that '[t]he purpose of the Rape Shield Law is to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim. Significantly, it is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." **Commonwealth v. Cramer**, 195 A.3d 594, 602 (Pa.Super. 2018) (citations omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/18/20