664 A.2d 607

**COMMONWEALTH of Pennsylvania**

v.

**Javier CORREA, Appellant.**

Superior Court of Pennsylvania.

Submitted July 3, 1995.

Filed Aug. 31, 1995.

Reargument Denied Nov. 3, 1995.

Carmen C. Marinell, Allentown, for appellant.

Robert L. Steinberg, District Attorney, Allentown, for the Commonwealth, appellee.

Before CAVANAUGH, POPOVICH and HOFFMAN, JJ.

CAVANAUGH, Judge:

This appeal is from the court's order denying appellant's petition for relief under the PCRA. We reverse the court's order and remand for a new trial.

In October of 1991, appellant was convicted by a jury of rape, indecent assault, simple assault and criminal trespass. Following the denial of post trial motions appellant was sentenced to a term of 6–14 years imprisonment. There was no direct appeal from appellant's judgment of sentence. However, on September 13, 1993, appellant filed a PCRA petition requesting a new trial, alleging in support thereof, trial counsel's ineffectiveness for failing to object to certain allegedly improper remarks made by the prosecutor during his closing

624

argument to the jury. A hearing on appellant's petition was held without Commonwealth participation.[1] The court granted appellant's petition, finding that the prosecutor had engaged in prosecutorial misconduct sufficiently egregious to warrant a new trial.

The Commonwealth filed a motion for reconsideration of appellant's PCRA petition. The court granted the motion and vacated its previous order granting a new trial. After argument on the motion, the court entered its order granting appellant's claims of ineffective counsel and prosecutorial misconduct but denying appellant's petition for a new trial. The court explained:

> [D]efendant's Trial Counsel was ineffective, ... [for] his failure to object to the Prosecutor's continued misstatements of the facts, personal opinions regarding the credibility of the Defendant and his witnesses, and historical references to an irrelevant rape in New York City. The Defense Counsel did offer one objection to the Prosecutor's closing, but a request to strike certain remarks by the Prosecutor should have been made. Nevertheless, when the Court balances the weight of the evidence produced by the Commonwealth (particularly the eyewitness account of the victim with whom the Defendant admitted he had had sexual relations) against the harm done by the inappropriate remarks by the Prosecutor, it is clear that the failure of Trial Counsel to object had no significant impact upon the jury's verdict.

The instant appeal follows and presents one issue for our review.[2]

1. Opting to attend a simultaneously scheduled proceeding in an unrelated matter, the Commonwealth's attorney did not attend appellant's PCRA hearing. No continuance was sought.

2. Despite the Commonwealth's contention that appellant's allegations of ineffectiveness of counsel and prosecutorial misconduct are waived due to his failure to raise them post-trial, it is clear that the trial court did not deem them waived. The trial court considered them and disposed of them at the PCRA hearing. We are therefore persuaded that appellant's present issue, which contains the same allegations of error, is properly before us.

WHETHER APPELLANT JAVIER CORREA IS ENTI-
TLED TO A NEW TRIAL PURSUANT TO THE POST
CONVICTION RELIEF ACT WHERE HIS CONVIC-
TION RESULTED FROM INEFFECTIVE ASSIS-
TANCE OF COUNSEL WHICH SO UNDERMINED
THE TRUTH DETERMINING PROCESS THAT NO
RELIABLE ADJUDICATION OF GUILT OR INNO-
CENCE COULD HAVE TAKEN PLACE?

 Our standard of review is well settled. The law presumes counsel's effectiveness so that the burden of establishing ineffectiveness rests squarely on the defendant. *Commonwealth v. Donahue*, 428 Pa.Super. 259, 282, 630 A.2d 1238, 1250 (1993). In order for appellant to prevail on his ineffectiveness claim, "he must show 1) the underlying claim is of arguable merit; 2) the particular course of conduct of counsel did not have some reasonable basis designed to effectuate his interests; and 3) counsel's ineffectiveness prejudiced him." *Commonwealth v. Howard*, 538 Pa. 86, 93, 645 A.2d 1300, 1304 (1994). In the context of a PCRA claim, appellant must not only establish ineffective assistance of counsel, he must also plead and prove that counsel's stewardship "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Granberry*, 434 Pa.Super. 524, 530, 644 A.2d 204, 207 (1994).

 Instantly, appellant alleges counsel's ineffectiveness for failing to object to certain alleged improper remarks made by the prosecutor during his closing argument to the jury. Our standard for reviewing a prosecutor's remarks is as follows:

> In reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made. Generally, comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objec-

tively and render a true verdict. The initial determination whether the prosecutor's remarks were unfairly prejudicial rests within the sound discretion of the trial court and our inquiry of necessity must turn to whether an abuse of discretion was committed.

*Commonwealth v. Jubilee,* 403 Pa.Super. 589, 593–94, 589 A.2d 1112, 1114 (1991) (citations omitted).

The facts underlying the case *sub judice* can be summarized as follows. The victim, Carmen Nieves, and appellant became acquainted through Pedro Ortiz, who reportedly was Ms. Nieves' former live-in paramour and appellant's "best friend." Ms. Nieves testified that at 11:50 PM on June 10, 1991, appellant called her claiming he had something important to discuss with her but that he could not do so over the phone and needed to speak with her personally. She invited him to her home, a second floor apartment in downtown Allentown. When he arrived at her door fifteen minutes later, Ms. Nieves let him in and turned around to ascend the stairs to her living room. Ms. Nieves testified that when she reached the top of the stairs, appellant grabbed her, threw her onto the couch and raped her. She testified that she actively resisted appellant by screaming, hitting him and pulling his hair.[3] She testified that as appellant left her apartment, he threw her telephone to the bottom of the stairs. She followed him down the stairs to retrieve the phone, looked out the door and observed him running away.

Appellant, on the other hand, testified that he had been dating Ms. Nieves for several weeks prior to the incident and that during that time, had twice engaged in sexual relations with her. On the night in question, he testified that they again had consensual sex. Afterwards, however, Ms. Nieves,

---

3. Ms. Nieves testified:

Q. And what did he do to you?
A. He started to—he started to pull his pants down, and I started to hit him. And I screamed and nobody heard anything.

\* \* \* \* \* \*

Q. And were you still screaming and telling the Defendant to stop?
A. Yes, I screamed, I hit him, I pulled his hair … but, nobody did anything.

for unexplained reasons, became upset. She began screaming at him, accusing him of rape and threatening to call the police. Appellant testified, "I told her to go right ahead and call them, that I was headed towards my mother's house and that there I could be found." Appellant then left Ms. Nieves' apartment.

During his closing argument to the jury, referring to the fact that on the night in question, the police did not receive any calls concerning a woman's screams emanating from Ms. Nieves' apartment, the prosecutor remarked:

Do any of you remember the case, I believe it was either Detroit or New York, when the woman was stabbed in the alley, windows open. Famous case, movies were made about it. People didn't call the police. People didn't go down and help. They shut their windows, pulled their shades, went about their business. Why? Because they didn't want to get involved. Are you going to say it's okay because nobody showed up? Because nobody wanted to get involved?

Appellant's counsel did not object to these remarks, and the prosecutor, following up on the theme, finished his summation by commenting:

This is when her words can finally be heard. When she finally appeals to you to say, "Please listen to me." And she stated to you that what these people said wasn't true, "I'm telling you what happened on June 11th. You weren't there to hear me then, but you're here to hear me now. I did not consent." You have to decide if that's the truth.

This Court has established that the conduct of the prosecutor at closing argument is circumscribed by the concern for the right of the defendant to a fair and impartial trial. *Commonwealth v. Green,* 417 Pa.Super. 119, 125, 611 A.2d 1294, 1297 (1992). In defining impermissible conduct during closing argument, we have followed Section 5.8 of the ABA standards. *Id.; Commonwealth v. Joyner,* 469 Pa. 333, 365 A.2d 1233 (1976). Section 5.8 provides:

Argument to the jury.

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate evidence or mislead the jury as to inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his personal opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

In *Commonwealth v. Green, supra,* at 126, 611 A.2d 1297, the prosecutor made reference to the fact that there were 525 homicides committed in Philadelphia during the previous year, and remarked that "in Los Angeles they are shooting people on the highway for cutting them off because the highways are too crowded. Motive is not a part of this crime. This is a crime of madness." We held that such argument was reversible error, opining:

[T]he prosecutor's remarks were unprofessional and improper because they injected "issues broader than the guilt or innocence of the accused under the controlling law" and were calculated to inflame the prejudices of the jury. The facts injected and references made by the prosecuting attorney had absolutely nothing to do with appellant's guilt or innocence of the charges brought against him and could only cause prejudice to his defense by directing the jurors to the carnage resulting from senseless crimes committed by others in Philadelphia and Los Angeles.

*Commonwealth v. Green,* at 128–29, 611 A.2d at 1299.

In the case *sub judice,* we similarly find that the prosecutor's reference to a notorious case in "Detroit or New York" where a victim was reportedly stabbed to death on the street in view of others who did not come to her aid was a wholly

improper appeal to the emotions of the jury to right that wrong by coming to the aid of the victim in this case. The reference to that unrelated crime injected issues broader than the guilt or innocence of appellant and could only cause prejudice to his defense.

 At trial, appellant called several witnesses to corroborate his testimony that he and the victim had been dating. These witnesses testified that appellant and Ms. Nieves had been seen together in public on several occasions in the weeks prior to the incident in question. Appellant alleges that the prosecutor improperly rendered his personal opinion as to the credibility of appellant's testimony and that of appellant's witnesses. During his summation, the prosecutor remarked:

> Now if it seems as if I'm talking about some of the defense witnesses first, I'm doing that on purpose because I want to dismiss their testimony. Why? Because they have an interest, they have motivation, they have a reason to lie.

> \*　　\*　　\*　　\*　　\*　　\*

> Well, I was surprised by some of the evidence you heard in this trial. And Carmen was too as you may have been able to guess from the way she reacted. And so I have an opportunity to respond to some of that evidence. She took the stand and showed you for the first time that she was very upset. Not simply by what happened but because these people came in here and lied.

> \*　　\*　　\*　　\*　　\*　　\*

> Ask yourself, who but the defendant had something to gain by coming here today and the day before, and the day before, and lying?

> Our supreme court has previously stated:

> It is well settled that a prosecutor is not permitted to express a personal belief as to the defendant's guilt or innocence or as to the defendant's or other witness' credibility. *Commonwealth v. Carpenter*, 511 Pa. 429, 515 A.2d 531 (1986). In *Commonwealth v. Bricker*, 506 Pa. 571, 487 A.2d 346 (1985), we held that it was reversible error for the

prosecutor to state, during cross-examination of a witness, that the witness "lied."

*Commonwealth v. Johnson,* 527 Pa. 118, 122–23, 588 A.2d 1303, 1305 (1991).

Additionally, the prosecutor repeatedly remarked that appellant stated he ran from the apartment after the incident occurred.

Now let's turn our attention to one—to two last items before I finish on the facts. How did Carmen's testimony and the defendant's testimony come together somewhat? Well, they both said afterwards he ran back to his house. He said it was his mother's house. He said he just ran out. So we've got the running.

The prosecutor argued that such flight was evidence of consciousness of guilt.

And what did the defendant do? Broke the cordless phone so she couldn't call the police. Ran out Penn Street up to Liberty and down Liberty. The judge will tell you that evidence of flight or concealment could suggest consciousness of guilt. That the defendant knew because of what he had done that he may be accused of a crime. And was fleeing and doing acts to conceal it, by breaking that phone and running.

Appellant maintains that he did not testify to running away from the victim's apartment and alleges that the prosecutor's remarks to the contrary were improper. We agree. Our review of the record discloses that appellant did not state that he ran from the apartment. Rather such testimony was provided by the victim. It is clear that the prosecutor misrepresented the facts when he stated that the testimony of the defendant and the testimony of the victim coincided on that point. It has repeatedly been held that it is improper for a prosecuting attorney to make reference to matters which are not in evidence or supported by inferences to be drawn from the evidence. *Commonwealth v. Anderson,* 490 Pa. 225, 229, 415 A.2d 887, 888 (1980); *Commonwealth v. Sanders,* 380

Pa.Super. 78, 98, 551 A.2d 239, 249 (1988); *Commonwealth v. Howard,* 375 Pa.Super. 43, 53, 543 A.2d 1169, 1174 (1988).

For the foregoing reasons we find that the remarks complained of in the prosecutor's closing argument; i.e., his reference to an unrelated infamous crime, his negative characterization as to the credibility of appellant and his witnesses, as well as his misstating the facts of record as to appellant's alleged flight from the apartment, constitute prosecutorial misconduct.

■ We note that the trial court "granted" appellant's claims of ineffective counsel and prosecutorial misconduct. We agree that appellant's claims of ineffective assistance and prosecutorial misconduct are established by the evidence of record. However, despite the trial court's determination to the contrary, we cannot agree that the error was harmless. The evidence of appellant's guilt was not overwhelming. Indeed, the case ultimately was resolved by a determination of credibility. The Commonwealth alleged rape, and presented the testimony of the victim in support thereof. The appellant testified, on the other hand, that the sex was consensual and presented witnesses to corroborate his testimony that he had been dating the victim.

Because the case was close, the prosecutor's improper remarks, when considered *in toto,* and appellant's counsel's failure to object to those remarks, were not harmless error. The prosecutor's attempt to substitute exaggerated rhetoric for evidence carried him beyond the limits of permissible argument and deprived appellant of a fair and impartial trial. Counsel's failure to object thereto undermined the truth determining process so that no reliable adjudication of guilt or innocence could have taken place. Such error can only be corrected by the grant of a new trial. We therefore reverse the order denying appellant's petition for relief under the PCRA and remand for the purposes of a new trial.

Reversed and remanded. Jurisdiction relinquished.