J-A19016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OMAR S. HARRISON | : | |
| | : | |
| Appellant | : | No. 2130 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 25, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0007067-2017

BEFORE:  PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:                    Filed: November 25, 2020

Omar Harrison appeals from the judgment of sentence entered after a jury found him guilty of two counts of Involuntary Deviate Sexual Intercourse (person less than 16 years of age) and one count each of Statutory Sexual Assault, Institutional Sexual Assault, Indecent Assault, and Corruption of Minors.[1] Harrison challenges the sufficiency of the evidence, trial court evidentiary rulings, prosecutorial statements, and the discretionary aspects of his sentence. We affirm.

Harrison, a dean at a charter elementary school, was charged with crimes related to his relationship with, and assault of, a student, Z.R, including an encounter that occurred at an Econo Lodge on June 12, 2017.

---

[1] 18 Pa.C.S.A. §§ 3123(a)(7), 3122.1, 3124.2, 3126(a)(8), and 6301(a)(1)(ii), respectively.

Prior to trial, Harrison filed motions *in limine*, including: (1) a motion to preclude the Commonwealth from using the term "grooming," as the Commonwealth did not intend to provide expert testimony on "grooming"; (2) a motion to preclude the testimony of a motel manager, who intended to testify that the front desk clerk that was working at the motel on June 12, 2017, was fired later that summer for renting hotel rooms without documentation; and (3) a motion to admit a prior conviction of Z.R.'s mother as a *crimen falsi* conviction. The court denied the motions.

The court held a jury trial. Both the Commonwealth and the defense mentioned "grooming" in their opening statements. The Commonwealth stated:

> Now, you all are going to be able to see why we have these laws, and you're going to personally see what it's like for someone who's in an authority position, an adult, to groom, to sexualize, and to monopolize on the vulnerabilities of a child for their own sexual gratification.

N.T., 10/31/18, at 27.

Harrison stated:

> Ladies and gentlemen, you're going to hear the term was used during the course of the argument "grooming," that Mr. Harrison groomed [Z.R.]. Let's talk about this because part of the issue you're going to have to decide through the course of this trial is – it's 2018. Can an individual of a certain age have any kind of interaction with someone who's much younger? That's part of your decision here. And you're going to hear where Mr. Harrison explains exactly what was going on as far as his relationship with [Z.R.], that he checked her. When she would become sexual in terms of her conversations, he stepped back. You're going to hear the information that, well, Mr. Harrison was grooming [Z.R.]

for this sexual activity. The Commonwealth presented a PowerPoint, the map, all right? You're going to see that [Z.R.] lived approximately half a mile from the house [sic]. Well, you know what, Mr. Harrison, over the course of a few months, gave [Z.R.] rides to school. You're not going to hear about anything regarding what took place during the course of those rides to school. You're not going to hear anything about any inappropriate touching, any inappropriate contact, [or] inappropriate escalation of the relationship. When you talk about it – when you're going to hear about grooming, what is the whole purpose of grooming? To ultimately get them to the point -- get the juvenile to the point of sexual interaction and they control -- conceal the relationship, the sexual aspect of it so that they continue. What's the problem with this? Graduation's the problem. Six months later is a problem. A single incident is the problem. If this is supposedly grooming, this is not a one-and-done situation. This is something that is designed to be carried forth and to go forward, keeping it concealed to whatever date, and that's part of the problem here, ladies and gentlemen, if this is that, one time.

*Id.* at 37-38.

Z.R. testified at trial and said that Harrison was the dean of the elementary school she attended. *Id.* at 48. She testified that she met him when she was in the seventh grade and that at first he "was a father figure," but the relationship turned sexual. *Id.* at 50. She testified that when she was in the eighth grade, Harrison would drive her to school when her mother was unable to do so due to her work schedule. *Id.* at 51-52. He also sometimes drove her home from school. *Id.* at 53. She said they communicated through Instagram and on her house telephone, and that Harrison would pull her from her classes and they would have conversations in his office. *Id.* at 54-55.

Z.R. testified that Harrison "would come on to me and tell me how good I look and things like that," and that he told her that she was better than his

wife. *Id.* at 75. She stated that Harrison told her that he wanted to have threesomes with other students in the school. *Id.* at 76. She explained that he would pull her out of class and have her log into her Instagram account from his phone to make sure she had deleted the messages they exchanged. *Id.* She also said he also showed her pictures of his penis and of naked females. *Id.* at 76-77.

Z.R. testified that one day "at the end of [her] eighth-grade year before graduation," which was on June 23, 2017, Harrison got her to tell her mother that she would be attending a boxing class after school. *Id.* at 80. He then drove her to a motel, an Econo Lodge. *Id.* at 85. She waited in the car while Harrison rented a room. *Id.* at 86. After they went in the room, Z.R. went into the bathroom to freshen up and to take off her clothes, and when she came out, Harrison was naked. *Id.* at 87. She testified that she and Harrison then had sex, where his "penis went inside" her, and after they had intercourse, he "ate her vagina and [she] sucked his penis." *Id.* at 89, 91. She testified that "his tongue was on [her] vagina, and it was moving," and that he licked the lips of her vagina. *Id.* at 91-92.

Z.R. also testified that Harrison told her he had rented a room for them on the day of her graduation, but they did not go to the motel. *Id.* at 99. She said she and Harrison continued to communicate after she graduated from the elementary school. *Id.* at 102-04.

Z.R. testified that following her graduation, in October 2017, her mother discovered that Z.R. had an Instagram account and saw messages exchanged

between Z.R. and Harrison. *Id.* at 48. She stated that, when her mom asked her about it, "I kept denying it to protect him because I was in love with him." *Id.* at 57. Her mom went to the school to confront Harrison, and she called the police. *Id.*

The messages included the following, which Z.R. and Harrison exchanged in October 2017:

> [Z.R.] [I]'m coming up there Wednesday after school…when you gonna to take us out?
>
> [Harrison]: Maybe this weekend. Whatchu have goin' on??
>
> [Z.R.]: iont got nothing going my per[io]d gonna be off then yayy lol
>
> [Harrison]: "[Laugh, cry face emoji] i wasn't talking bout that, lol
>
> [Z.R.]: Oohh i was thinking we could slide that in
>
> [Harrison]: Haaaa! #Maybe

Commonwealth Exh. C2.

The following exchange also occurred in October 2017:

> [Z.R.] You a weirdo bye boy you a whore lol
>
> [Harrison]: And u being w the dean over there makes u a what??? [laugh face emoji]
>
> [Z.R.]: [numerous laugh face emojis] Wallahi I don't talk to him lol he is fine, but I'm over here chillin' and he not fucking me so I'm not a whore dummy I'm a baby thot there's a difference, duhh [four laugh face emojis]
>
> [Harrison]: Ever!! [three laugh, cry face emojis]
>
> [Harrison] You my baby thot right?
>
> [Z.R.]: Ever the baby Thot dh [four laugh face emojis].

- 5 -

[Z.R.] Naw but I'm ya baby lol [heart emoji, laugh face emoji]

*Id.* Z.R. testified that "thot" was slang for "that ho over there." N.T., 10/31/18, at 71.

The prosecution also presented the testimony of Sergeant James Young Simpkins, Jr. He stated that after Z.R. reported the relationship to the police, he spoke with Harrison. Sergeant Simpkins said that Harrison told him he took Z.R. to Econo Lodge once, but was there to meet another girl, whom he did not want to involve in the investigation. *Id.* at 173-75. Sergeant Simpkins further testified that the police determined from cell phone records that the incident at the Econo Lodge occurred on June 12, 2017. N.T., 11/5/18, at 12-13.

The general manager of the Econo Lodge, Prad Sayal, testified that the Econo Lodge had records for Harrison for three dates in 2017, but not for June 12. N.T., 10/31/18, at 240. He said that on June 12, 2017, a former employee of the Econo Lodge was working the front desk, and he explained that in August 2017, the former employee was fired because he had been selling rooms without paperwork and pocketing the money. *Id.* at 244-48. On cross-examination, Harrison's counsel asked if there was any other reason for the employee's firing, and Sayal answered, "No." *Id.* at 252.

Z.R.'s mother, A.G., testified next. *Id.* at 259. She stated that Harrison worked at the school, and sometimes drove Z.R. to school. *Id.* at 262. She further testified that Harrison spoke on the phone with Z.R. and another student. *Id.* at 263. She said that in October 2017, she was looking on the

tablet Z.R. used and discovered Instagram messages between Z.R. and Harrison. *Id.* at 267-68. She retrieve a bat and she and Z.R. drove to the school. *Id.* at 269. Z.R. then told the police about the relationship. *Id.* Following the encounter, A.G. and Harrison exchanged text messages, where he claimed he and Z.R. never had sex.

The Commonwealth and Harrison stipulated that "[o]n the day of the offense at issue, . . . Harrison was 41 years old[ and Z.R.] was 14 years old." N.T., 10/31/18, at 45.

In his closing argument, Harrison again mentioned grooming:

> I submit to you, ladies and gentlemen, the term His Honor already talked about a little bit -- grooming. This is not consistent behavior if that is the case. All right. This is a single incident. Now, if someone is grooming someone it's for prolonged period of time, done in such a way as to avoid discovery. You're not going to do it in an open school. You're not going to do it where there – you're surrounded by professionals, trained, dedicated, who are obligated under the law to report that. You're not going to do -- and one time and done over the summer? Free time for everybody. Nothing further. New school year, nothing further.

N.T., 11/5/18, at 29-30.

The jury convicted Harrison of the above-referenced offenses. At sentencing, the court heard from Z.R. and A.G., and also from Harrison and Harrison's mother. The trial court imposed an aggregate sentence of 12¾ to 25½ years' imprisonment. It provided the following reasons:

> Now the [c]ourt wants to put on the record numerous factors. First of all, the [c]ourt has heard from both the defense and from the Commonwealth, the various witnesses, the victim impact statements. The [c]ourt notes

that as reflected from the county PSI the background of Mr. Harrison. He has two prior adult arrests in Philadelphia in 2013, both guilty verdicts from trials from jury verdicts, one for Recklessly Endangering Another Person and another one for Possessing an Instrument of Crime. I did study his employment history. He was a teacher's assistant at Don Guanella for a little bit and then became Dean of Students at . . . the school that's the subject of this case. During Mr. Harrison's allocution during his statement to the [c]ourt, the [c]ourt is struck by the fact and has read in the PSI that again Mr. Harrison seems to -- he doesn't seem to understand, doesn't seem to get it. After 12 jurors found him guilty, 12 jurors found him guilty, he still denies culpability. He doesn't take responsibility. His comments to the [c]ourt today are that again first in the PSI he blamed the police for setting him up as for some reason there was some crazy rationale that the police, who did an excellent job in this case who were just investigating what they were told as if they were at fault. Then after that he blames his attorney because he didn't do a good job. And then he seemed to blame the victim and the family for a lot of coaching going on. During his allocution he mentioned this is a huge misunderstanding. However, this is not a huge misunderstanding. This is a huge crime. You don't seem to understand what's going on here. You're either in complete denial of what's happened here or you're the most arrogant bluster of a pathological liar I've even seen. All 12 people found you guilty of this, not 1, not 2, not 3, all 12 people found you guilty of all the charges. As [Z.R.] testified, you destroyed and wrecked a very important part of her life which she can never get back. You were in a position of authority. You were the Dean of Students and you ended up being the Dean of Deception for [Z.R.] and her family. You've taken absolutely no responsibility for this. You were in a position of authority and you destroyed her. You violated every decent professional moral standard that anybody would hold. The [c]ourt must respect the jury's verdict. I have a duty. This [c]ourt has a duty for protection of the public, the gravity of the offense, these are felonies, felony 1's, most of them, and relation to the impact of the victim, . . . and her family, and the rehabilitative needs of [Harrison]. But as this report states the rehabilitative needs of [Harrison] are almost useless if [Harrison] is in a complete state of denial or pathologically lying about what

happened here. Mr. Harrison would ask this [c]ourt to completely disregard the verdict of the jury because Mr. Harrison knows better where the [c]ourt should have listened to [Harrison] and not the 12 jurors. Again, this is the height of arrogance and it's unbelievable to th[e] [c]ourt. Th[e] [c]ourt does not relish or enjoy sentencing people, and I know your family is broken and so is [Z.R.'s] family, and the only person who took a hammer to everybody's life was you, Mr. Harrison. So in relation to all those factors the [c]ourt is going to sentence as follows. Count 1, Statutory Sexual Assault, 24 to 48 months. Count 2, Involuntary Deviate Sexual Intercourse, 57 to 114 months. That will be consecutive to Count 1. Count 3, Involuntary Deviate Sexual Intercourse, 57 to 114 months. That will be consecutive to Counts 1 and 2. Count 4, Institutional Sexual Assault, that will be 12 to 24 months consecutive to Counts 1, 2 and 3. Count 5, Indecent Assault, merges with the other counts I have mentioned, 1, 2, 3 and 4. And Count 6, Corruption of Minors, 3 to 6 months. This runs consecutive to all the other counts. It's a total of 153 months to 306 months for an aggregate of 12.75 years to 25-1/2 years. That's the sentence. That's the reason for the sentence. And I'm sorry for everybody here in the courtroom, both your family and [Z.R.'s] family. Perhaps time will heal some wounds but this is an appropriate sentence considering all the factors mentioned in this court and in this case. Thank you. That's it.

N.T., 3/25/19, at 40-44.

Harrison filed a post-sentence motion, which the trial court denied.

Harrison filed a timely appeal. Harrison raises the following issues:

[1.] Whether the evidence was insufficient to sustain the verdict of guilty of Involuntary Deviate Sexual Intercourse on the allegation that Mr. Harrison performed oral sex on the complainant because the Commonwealth did not prove beyond a reasonable doubt that [Harrison] engaged in deviate sexual intercourse with a complainant who is less than 16 years of age and [Harrison] is four or more years older than the complainant and the complainant and [Harrison] were not married to each other?

[2.] Whether the evidence was insufficient to sustain the verdict of guilty of Statutory sexual assault because the Commonwealth did not prove that Mr. Harrison and the complainant were not married to each other?

[3.] Whether the evidence was insufficient to sustain the verdict of guilty of Indecent assault because the Commonwealth did not prove that Mr. Harrison and the complainant were not married to each other?

[4.] Whether the Trial Court erred when it allowed the Commonwealth to use the term "grooming" in opening and closing when that term is a term of art reserved for use by expert witnesses. The term inflamed the jury, suggested that there would be evidence that was more prejudicial than probative, and the term suggested evidence that was irrelevant to the case at hand?

[5.] Whether the Trial Court erred when it allowed the Commonwealth to elicit testimony that a hotel clerk was fired five months after the allegations arose for surreptitiously renting rooms in the hotel in question, to cover the Commonwealth's failure to prove that the allegations could have materialized in the hotel?

[6.] Whether the Trial Court erred when it disallowed Defense Counsel to cross examine Commonwealth witness Alisha Gambrell using a prior *crimen falsi* conviction?

[7.] Whether the Trial Court erred when it denied Mr. Harrison's motion for reconsideration challenging the discretionary aspects of his sentence because the sentence is harsh and excessive under the circumstances?

Harrison's Br. at 11-12.

In his first three issues, Harrison argues the Commonwealth failed to present sufficient evidence to support the verdict. "When reviewing a sufficiency of the evidence claim, we must determine whether, when viewed in the light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that

each element of the crime charged is established beyond a reasonable doubt." ***Commonwealth v. Dix***, 207 A.3d 383, 390 (Pa.Super. 2019). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Id.*** (quoting ***Brown***, 23 A.3d 544, 559 (Pa.Super. 2011) (*en banc*)). "[T]he uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant." ***Commonwealth v. Charlton***, 902 A.2d 554, 562 (Pa.Super. 2006) (quoting ***Commonwealth v. Davis***, 650 A.2d 452, 455 (Pa.Super. 1994)).

Harrison first claims that the Commonwealth failed to prove penetration sufficient to establish one of the convictions for IDSI. He claims that Z.R. answered "no" when asked if Harrison's tongue penetrated her vagina. He claims that, although the testimony stated there was contact "on" the victim's vagina and "on the lips of [her] vagina," the testimony did not establish penetration. He claims that the testimony did not establish he "entered in the labia," or that he engaged in acts of oral or anal intercourse that involved penetration, however slight. Harrison's Br. at 24.

A person commits IDSI with a Person Less Than 16 Years of Age when the person engages in deviate sexual intercourse with a complainant "who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S.A. § 3123(a)(7). "Deviate sexual intercourse" includes "intercourse per os or per anus between human beings." 18 Pa.C.S.A. § 3101.

- 11 -

"In addition to its ordinary meaning," sexual intercourse "includes intercourse per os or per anus, with some penetration however slight[.]" ***Id.*** "[A] person can penetrate by use of the mouth or the tongue." ***Commonwealth v. Wilson***, 825 A.2d 710, 714 (Pa.Super. 2003) (quoting ***Commonwealth v. L.N.***, 787 A.2d 1064, 1070 (Pa.Super. 2001)). However, IDSI does not require penetration of the vagina; oral contact with the labia is sufficient. ***Commonwealth v. Trimble***, 615 A.2d 48, 50 (Pa.Super. 1992).

Z.R. testified that Harrison's "tongue was on [her] vagina, and it was moving," and that he licked the lips of her vagina. N.T., 10/31/18, at 83-84. This was sufficient to establish, beyond a reasonable doubt, penetration. ***In Interest of J.R.***, 648 A.2d 28, 33 (Pa.Super. 1994) (finding penetration occurred where defendant licked victims vagina).

Harrison next claims that the Commonwealth failed to prove Harrison committed IDSI, statutory sexual assault or indecent assault because it failed to prove that Harrison and Z.R. were not married. He argues that there was no testimony about the absence of marriage of Z.R. and Harrison, and, although there was testimony about Harrison's wife, that alone does not prove the absence of marriage to Z.R., as he could have been referring to an ex-wife.

A person commits a crime of IDSI at the statutory provision relevant here where the person engages in deviate sexual intercourse with a complainant "who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not

married to each other." 18 Pa.C.S.A. § 3123(a)(7). Further, the crime of statutory sexual assault occurs where the person "engages in sexual intercourse with a complainant under the age of 16 years and that person is 11 or more years older than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S.A. § 3122.1(b). "A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and . . . (8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S.A. § 3126(a)(8). Therefore, to establish the convictions for IDSI, statutory sexual assault, and indecent assault, the Commonwealth had to prove Harrison and Z.R. were not married.

Here, the testimony established that Z.R. and Harrison lived at different residences, that Harrison was the dean at Z.R.'s school, and that A.G. was unaware of the extent of the relationship. Further, Z.R. was 14, and Harrison was 41, and Z.R. testified that Harrison mentioned his wife to Z.R. This was sufficient to establish, beyond a reasonable doubt, that the 14-year-old victim was not married to Harrison. The Commonwealth presented sufficient evidence to establish the elements of the crimes beyond a reasonable doubt.

Harrison next claims that the court erred when it allowed the Commonwealth to use the term "grooming" in its opening statement. He argues the term is a term of art reserved for experts, and that it inflamed the jury and suggested evidence that was irrelevant. He claims that "[d]riving a student is not grooming, nor is texting, nor is conversing." Harrison's Br. at 31. He argues "[g]rooming is driving a complainant to an adult bookstore or saloon, texting sexually explicit material or language, talking to a complainant about sex or plans to have sex of the complainant's history regarding same." *Id.* He claims "[n]either cunning diction nor cross examination can cure the error here because what was promised in opening never appeared in the record." *Id.* at 32.

We review a trial court's decision to overrule an objection to a prosecutor's statements for an abuse of discretion. *Commonwealth v. Mollett*, 5 A.3d 291, 311 (Pa.Super. 2010). "In reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa.Super. 2006) (quoting *Commonwealth v. Correa*, 664 A.2d 607, 609 (Pa.Super. 1995)). "Generally, comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Id.* (quoting *Correa*, 664 A.2d at 609).

The trial court found that the "Commonwealth's usage of the term 'grooming' was merely to add more color to their argument, as permitted under *Sampson*." Trial Court Opinion, filed Nov. 15, 2019, at 7 ("1925(a) Op."). It reasoned there was "no indication that the Commonwealth's use of the term negatively impacted the jury against [Harrison]," and that there was "no evidence that the jury, upon hearing the term, [was] unable to fairly weigh all of the evidence and render a verdict based upon the evidence presented." *Id.* This was not an abuse of discretion. We further note that Harrison was able to present his definition of grooming, and argue that the conduct here did not constitute grooming.

In his next two issues, Harrison challenges the trial court's evidentiary rulings. We review a trial court ruling on admission of evidence for an abuse of discretion. *Commonwealth v. Talley*, 236 A.3d 42, 55 (Pa.Super. 2020). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Id.* (quoting *Geise v. Nationwide Life and Annuity Co. of America*, 939 A.2d 409, 417 (Pa.Super. 2007)). Further, "for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." *Id.* (quoting *Geise*, 939 A.2d at 417).

Harrison claims the court erred when it allowed the Commonwealth to elicit testimony that a motel clerk was fired months after the allegations arose.

He argues the Commonwealth was not able to prove Harrison was at the hotel, because there were no record showing his presence. He claims the court used its "discretion by filing the hole in the Commonwealth's case with the testimony of the . . . firing allowing the Commonwealth a location of the allegations." Harrison's Br. at 33-34. He notes that the manager did not know Harrison and did not know whether the former employee rented a room to Harrison. He claims the evidence was more prejudicial than probative because it "proved nothing, but the prejudiced was overwhelming." *Id.* at 34-35.

Relevant evidence is admissible, unless otherwise provided by law. Pa.R.Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.Evid. 401. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.Evid. 403. Further, Pennsylvania Rule of Evidence 602 provides: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Pa.R.Evid. 602. On cross-examination, a party may question a witness about matters raised during direct examination, and "any facts tending to refute inferences arising from matters raised during direct

testimony." ***Commonwealth v. Ogrod***, 839 A.2d 294, 322 (Pa. 2003) (quoting ***Commonwealth v. Begley***, 780 A.2d 605, 627 (Pa. 2001)).

The trial court concluded it did not err, reasoning:

> At trial, counsel argued that due to a lack of documentation, there was no indication as to what the employee in question was actually fired for. In response, th[e] [c]ourt held that the testimony concerning the reason for the employee's firing would be permitted and that [Harrison's] remedy would be to cross-examine the witness in question. Defense counsel did cross-examine the witness and asked if there was any other reason, bedside the ex-employee selling rooms under the table, that he was fired, to which the hotel manager answered "no." There is no case law to suggest that a hotel manager, who has firsthand knowledge, cannot testify to the reasons an employee was fired without documentation.

1925(a) Op. at 7-8 (internal citations omitted).

The trial court did not abuse its discretion. The manager had personal knowledge as to why the employee was fired and the testimony that the former employee, who was working on the day of the incident, was fired for selling rooms without documentation was relevant to the case. Further, any prejudicial effect did not outweigh the testimony's probative value.

Harrison next claims the court erred in precluding him from using A.G.'s prior conviction during cross-examination. He alleges the conviction was a *crimen falsi* conviction. He argues that, pursuant to ***Commonwealth v. Cascardo***, 981 A.2d 245 (Pa.Super. 2009), a federal conviction for tampering with a witness is a *crimen falsi* conviction. He maintains that A.G.'s conviction is similar and therefore is a *crimen falsi* conviction.

Pennsylvania Rule of Evidence 609 provides that *crimen falsi* crimes may be used to attack the credibility of the witness:

> (a) **In General.** For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement.

Pa.R.Evid. 609(a). A *crimen falsi* crime "involves the element of falsehood, and includes everything which has a tendency to injuriously affect the administration of justice by the introduction of falsehood and fraud." **Cascardo**, 981 A.2d at 253 (quoting **Commonwealth v. Jones**, 5 A.2d 804, 805 (Pa. 1939)).

The criminal docket for A.G. attached to Harrison's motion *in limine* provides that A.G. pled guilty to retaliation against a witness, 18 Pa.C.S.A. § 4953(a), and harassment, 18 Pa.C.S.A. § 2709(a)(4). Motion *in Limine*, filed Oct.29, 2018, at Exh. B. Although she was charged with intimidation of a witness, that charge was *nolle prossed*. **Id.** In his appellate brief, Harrison argues that A.G. had a prior conviction for intimidation of a witness. At the hearing on the motion *in limine*, the court noted "[t]he third issue is a conviction for one of the . . . prosecution witnesses about a prior conviction for retaliation against a witness." N.T., 10/31/18, at 8-9. When denying the motion, the court stated, "counsel had indicated he wishes to impeach the witness with a prior conviction for intimidation of a witness." N.T., 10/31/18, 258. Similarly, in its opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), it stated that it "[could not] find any case law that would

indicate that a conviction for intimidation of a witness would satisfy the requirements of R. Evid. 609(a)." 1925(a) Op. at 8.[2]

_____

[2] Retaliation against a witness provides:

> **(a) Offense defined.--**A person commits an offense if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim or a party in a civil matter.

18 Pa.C.S.A. § 4953(a). Intimidation of a witness provides:

> **(a) Offense defined.--**A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
>
> (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.
>
> (2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.
>
> (3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.
>
> (4) Give any false or misleading information or testimony or refrain from giving any testimony, information, document or thing, relating to the commission of a crime, to an attorney representing a criminal defendant.
>
> (5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

It is unclear what crime—retaliation against a witness or intimidation of a witness—the trial court considered when addressing this motion, and the record includes evidence of a conviction for retaliation against, but not intimidation of, a witness.[3] We conclude that we need not address whether the conviction should have been precluded because, even if the court erred in not permitting Harrison to question A.G. regarding her prior conviction, the error would be harmless.

An error is harmless where:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Ballard*, 80 A.3d 380, 398-99 (Pa. 2013) (quoting *Commonwealth v. Fears*, 836 A.2d 52, 69 n.18 (Pa. 2003)). Here, Z.R. testified as to Harrison's conduct, Sergeant Simpkins testified regarding the investigation, including Harrison's statement that he brought Z.R. to the Econo Lodge, and A.G. testified about finding messages exchanged between Harrison and Z.R. Harrison cross-examined all witnesses, including A.G. Further, the

---

> (6) Absent himself from any proceeding or investigation to which he has been legally summoned.

18 Pa.C.S.A. § 4952(a).

[3] We note that in its brief the Commonwealth also states the crime at issue is intimidation of a witness.

- 20 -

Commonwealth entered into evidence some of the messages exchanged between Harrison and Z.R. Considering the overwhelming evidence presented at trial, the failure to question A.G as to the prior conviction did not result in prejudice to Harrison.

Harrison next raises three challenges to the discretionary aspects of his sentence: (1) his sentence was harsh and excessive, and the court failed to mention the guidelines or Harrison's rehabilitative needs, including that he was an educator with two misdemeanors; (2) the court improperly considered his failure to take responsibility for the conduct; and (3) the court failed to consider whether a sentence of total confinement was necessary.

"The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa.Super. 2018). Before reviewing the merits of Harrison's claim, we must determine whether: "(1) the appeal is timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code." *Commonwealth v. Green*, 204 A.3d 469, 488 (Pa.Super. 2019).

Harrison filed a timely appeal, and included a concise statement of reasons relied upon for allowance of appeal. We must therefore determine

whether he raised the issues in a post-sentence motion and whether he has raised a substantial question for our review.

Harrison first claims that the sentence is harsh and excessive, and the court failed to consider his background and rehabilitative needs. He raised this issue in his post sentence motion. Further, the issue raises a substantial question. *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa.Super. 2015) (*en banc*) (claim of excessiveness coupled with failure to consider rehabilitative needs raises substantial question). We will therefore address it.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Luketic*, 162 A.3d 1149, 1162-63 (Pa.Super. 2017) (quoting *Commonwealth v. Bricker*, 41 A.3d 872, 875 (Pa.Super. 2012)). "[T]o establish that the sentencing court abused its discretion, [the defendant] must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* (quoting *Commonwealth v. Williams*, 69 A.3d 735, 741 (Pa.Super. 2013)) (alteration in original). "Where the sentencing court had the benefit of a presentence investigation report ('PSI'), we can assume the sentencing court 'was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.'" *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa.Super. 2010) (quoting *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988)).

The court considered the PSI, the testimony from the sentencing hearing and Harrison's allocution. The court stated its reasons for the sentence imposed, and did not abuse its discretion in imposing the sentence. This issue is meritless.

In his appellate brief, Harrison also claims the court erred because the trial court "expressed surprise that Mr. Harrison maintained his innocence, a stance that Mr. Harrison cannot be forced by the government to yield." Harrison's Br. at 26.

Harrison failed to include this claim in his post-sentence motion and therefore waived the claim. *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1043 (Pa.Super. 2013) (*en banc*) (finding discretionary aspect of sentence claim waived where not raised in post-sentence motion). Further, even if he had preserved the claim, we would conclude it lacks merit.

This Court has concluded that it is "undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs." *Commonwealth v. Bowen*, 975 A.2d 1120, 1125 (Pa.Super. 2009). We further held that "silence at sentencing may not form the basis of finding that a defendant failed to take responsibility for his crimes, and that silence at sentencing may not be the sole basis for finding that a defendant lacked remorse." *Id.* at 1127.

Here, Harrison did not remain silent at sentencing. Rather, he addressed the court and continued to blame others for his crimes. The court did not use his silence, but rather his allocution and his statements contained in the PSI, when determining that he lacked remorse and failed to take responsibility. Further, the court considered Harrison's failure to take responsibility and lack of remorse in relation to protection of the public, the gravity of the offense, and his rehabilitative needs. The court did not an abuse its discretion.

Harrison further "demands the protection" of the total confinement sentencing provision, and argues the court made no statements as to whether he had been convicted for another crime, whether he would be likely to commit another crime if not incarcerated, or whether incarceration was required to vindicate the authority of the court.

Harrison did not raise this claim in his post-sentence motion and therefore waived the claim. **See Cartrette**, 83 A.3d at 1043. Further, even if he had raised it, we would conclude it lacks merit.

Section 9725 provides:

> The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:
>
> (1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;
>
> (2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

> (3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

42 Pa.C.S.A. § 9725.

In imposing the sentence of total confinement, the court considered the PSI, and the testimony and allocution at the sentencing, when imposing sentence. Further, Harrison fails to explain why a sentence of anything but total confinement would have been appropriate for the convictions in this case. The court did not abuse its discretion.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/20